The STATE of Oklahoma, ex rel. Gil BURK and C. B. Ray, Myrta Rorem, Hali Jean Wells, Admx. of the Estate of Mildred Wells, and William Byron Hayes and Rhoda P. Hayes, husband and wife, Plaintiffs-Appellees,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, Defendant-Appellant,

The Two Thousand Classen Building Corporation, American Fidelity Assurance Company, C. W. Cameron, et al., Defendants.

No. 50794.

Supreme Court of Oklahoma.

July 24, 1979.

John Connolly, Jr. and Tom J. Lee, Oklahoma City, for plaintiffs-appellees.

Walter M. Powell, Municipal Counselor, Mark E. Monfort, Asst. Municipal Counselor, Oklahoma City, for defendant-appellant.

SIMMS, Justice:

This appeal by the City of Oklahoma City arises from an order fixing the amount of attorney's fees to be paid from a common, equitable fund created for the City through the efforts of attorneys for named appellees. A history of this litigation and authority of the trial court to award attorney fees from the equitable fund is found in *State ex rel. Burk et al. v. City of Oklahoma City et al., Okl., 522 P.2d 612 (1974). See, also State ex rel. Burk et al. v. City of Oklahoma City, Okl., 556 P.2d 591 (1976).*

The sole issue to be decided in the instant appeal is whether or not the attorneys' fees of $225,000.00 awarded by the trial court are excessive.

Appellants concede that in this case attorney fees are recoverable under the "equitable fund doctrine," sometimes referred to as the "trust fund doctrine", as adopted from the English Common Law in *Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).* This doctrine declares that when an individual, through his efforts, succeeds in creating or preserving a fund, then such individual is entitled to invoke the equitable powers of the Court and have his fees paid from the fund. See: *State ex rel. Board of County Commissioners of Harmon County v. Oklahoma Tax Commission, 194 Okl. 359, 151 P.2d 797 (1944).*

In ascertaining whether or not an award of attorney fees under the "equitable fund doctrine" is either inadequate or excessive, we must first determine the proper standards to be used by the trial court in fixing the amount of the fee. Oklahoma apparently has not addressed this narrow issue, for neither party cites authority from this jurisdiction in their briefs, nor has independent research led to an Oklahoma case dispositive of the question. We therefore turn to other jurisdictions to aid us in establishing the criteria to be used by trial courts in awarding attorneys' fees, especially when the fees are chargeable against an "equitable fund". or "trust fund".

Three recent federal cases are highly persuasive on the issue of establishing the basis for the amount of attorneys' fees in this case and related cases. We discuss these federal decisions in the chronology of their promulgation.

*Lindy Bros. Builders, Inc. of Phila. et al. v. American R&S. San. Corp., 487 F.2d 161 (3rd Cir. 1973)* held that the equitable fund doctrine may be employed to compensate attorneys for commencing, pursuing, or settling litigation for the benefit of a class of persons when the suit confers a benefit on all the class, although certain members of the class did not participate in the litigation. The *Lindy* court observed that the award of attorneys' fees in analogous to an action in *quantum meruit* because the attorney seeking a fee award has, by his actions, benefited another and should receive payment for the value of the service performed. These fees, the court held, may be awarded on the attorney's petition.

In detailing the standards that should guide trial courts in awarding fees, *Lindy* held that first, the court must determine the number of hours spent by the attorney and in what manner those hours were spent; second, the trial court must attempt to place a value upon those services recognizing that different activities demand different compensation. The Third Circuit went on to say that while the hourly rate

times the number of hours spent cannot properly be the sole criteria in awarding fees, this approach should nevertheless be the "lodestar" of the court's fee determination. Two additional factors are to be taken into account in determining the award of reasonable compensation for attorneys. One, that attorneys' fees should be increased in proportion to the unlikelihood of success. And, second, the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the attorney is reasonably entitled. In evaluating quality of work, the court should consider the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and the amount of recovery obtained.

In *Evans v. Sheraton Park Hotel et al.,* 164 U.S.App.D.C. 86, 96, 503 F.2d 177, 187 (1974), the Court adopted specific guidelines set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (1974), to enable trial courts to arrive at just compensation for lawyers:

"1. Time and labor required.

2. The novelty and difficulty of the questions.

3. The skill requisite to perform the legal service properly.

4. The preclusion of other employment by the attorney due to acceptance of the case.

5. The customary fee.

6. Whether the fee is fixed or contingent.

7. Time limitations imposed by the client or the circumstances.

8. The amount involved and the results obtained.

9. The experience, reputation and ability of the attorneys.

10. The 'undesirability' of the case.

11. The nature and length of the professional relationship with the client.

12. Awards in similar cases."

In *National Ass'n of Reg. Med. Prog., Inc. v. Weinberger,* 396 F.Supp. 842 (1975),

Judge Flannery of the U.S. District Court of the District of Columbia addressed the issue of attorney fee awards and reviewed a number of federal decisions on the subject, placing particular emphasis on *Lindy, supra,* and *Evans, supra.* Embracing both previous decisions, *Weinberger* established attorney fees as follows:

"The court will analyze first the type of work involved in the case and the number of hours expended by [the attorney] on various efforts. The court then will consider the proper hourly fee to be charged for this work. After arriving at a strictly hourly figure, the court then will consider what amount, if any, should be added to the petitioner's compensation, based particularly on the contingent nature of this litigation, the benefits conferred on plaintiff class, the service rendered to the public, the difficulty of the issues involved and petitioner's skill in dealing with them, and the other factors set forth by the Court of Appeals in *Evans v. Sheraton Park Hotel,* supra." at 848, 849.

The strictly hourly figure arrived at by the Court was called the "time compensation factor." All other factors were classified as an "incentive fee or bonus." We conclude from *Weinberger* that the proper procedure to be followed by trial courts in establishing a reasonable attorney fee in this type of case is to first determine hourly compensation on an hours times rate basis, and to that factor add an amount determined from the applicable factors set forth in *Evans, supra.*

We find no conflict existing between the federal decisions hereinabove discussed and our Code of Professional Responsibility, 5 O.S.1971, Ch. 1, App. 3. DR. 2–106. FEES FOR LEGAL SERVICES, reads:

"(A) A lawyer shall not enter into an agreement for, *charge, or collect* an illegal or *clearly excessive* fee.

(B) A fee is *clearly excessive* when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be

considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent."

The transcript in the case at bar indicates that attorneys for appellees did not keep time records of their work as the litigation progressed, but rather they had to reconstruct the number of hours spent in various legal endeavors. The attorneys concluded, based upon review of their files and court files, that they had spent approximately 2500 hours on the case. Lawyer expert witnesses gave differing opinion testimony as to the hourly rates for the services performed. The expert testimony ranged from $30 per hour to $100 per hour, the $100 per hour to be allowed if percentage of total recovery were not allowed, but there was no evidence that the $100 hourly rate was a standard in the legal community at the time. Although the trial court failed to fix a rate of hourly compensation, a review of all evidence relevant to the amount of hourly compensation heavily preponderates in favor of fixing the rate of hourly compensation at $50.00.

Taking the 2500 hours expended and multiplying it by the $50 hourly rate, we arrive at a base, compensatory fee of $125,000.00 to which the attorneys are entitled.

We next turn our attention to the incentive fee or bonus award as described in *Weinberger, supra.*

The lawyers who ultimately established the equitable fund in this case were faced with low probability of success at the time the action was commenced, or to put it another way, they were faced with a high contingency. As the trial judge observed, he was the trial judge in the matter and had been familiar with the case throughout all aspects from the beginning. The learned and experienced trial judge observed that the lawyers were champions of a cause which was unpopular in high places. The lawsuit was unique and proved difficult. Pursuit of recovery on behalf of the class, and for the benefit of the City of Oklahoma City, required great perseverance when eventual compensation seemed uncertain. The lawyers were successful in restoring a valuable right to the citizens of Oklahoma City which was taken from them by fraud. This right was restored by the establishment of the equitable or trust fund.

In addition to studious preparation for trial and trial time, the record in this Court discloses that multiple briefs had been filed by the attorneys in a multiplicity of appeals arising from this continuing litigation. These briefs reflect considerable research and preparation. Suffice it to say, considerable legal skills are exhibited in the briefs filed by appellee's attorneys.

Again, the trial court fixed no figure for the "incentive fee" or "bonus fee", but following the path of *Weinberger, supra,* we find that a bonus of 40% of total hourly compensation is sustained by the evidence presented to the trial court. Also, the attorneys seeking a fee are entitled to reasonable fees for time spent on the application for their fee and in defense of this appeal. See, *Weinberger, supra, 396 F.Supp. at 857.*

We therefore find the total compensation to which the attorneys are entitled is as follows:

| | |
|---|---|
| Hourly compensation for work on merits | $ 125,000.00 |
| Compensation for work on application for fee and appeal | 5,000.00 |
| Incentive bonus | 50,000.00 |
| Total Fee | $ 180,000.00 |

While the trial court did not determine the precise amount of the fees as above, we find and so hold that the difference between the two amounts is so great as to constitute an abuse of discretion and we therefore modify the trial court's judgment.

■ Hereafter, attorneys in this state should be required to present to the trial court detailed time records showing the work performed and offer evidence as to the reasonable value for the services performed for different types of legal work. Reasonable value of services should be predicated on the standards within the local legal community. This will enable trial courts to remove the fixing of attorney fees, not only in this type of action, but in every case, from the realm of speculation and guesswork into the area of simple mathematical computation. The trial court may then, with certainty, determine the compensatory fees.

Lawyers who seek an award of attorney fees should offer evidence relating to one or more of the applicable criteria or standards for reasonable fees set forth in our Code of Professional Responsibility, supra, and the standards as adopted by this Court from *Weinberger*. This will enable the court to determine reasonable compensation as an incentive or bonus.

■ A particular word of caution to the trial judges of Oklahoma is here warranted. When a question on appeal presents the issue of reasonableness of attorney's fees awarded by the court, abuse of discretion by the trial judge is the standard of review. Therefore, the trial court should set forth with specificity the facts, and computation to support his award. While the compensatory fee is not all that difficult a problem on review if the trial court has made findings into the record regarding hours spent and reasonable hourly rates, the value placed on additional factors will be different in each case. Obviously, the reasonable value to be given for incentive fees should bear a reasonable relationship to the aggregate hourly compensation.

The attorney fees as herein modified, are to be paid to the attorneys in the manner ordered by the trial court.

JUDGMENT OF THE TRIAL COURT AFFIRMED, AS MODIFIED.

LAVENDER, C. J., and IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, DOOLIN, and HARGRAVE, JJ., concur.