**PROFESSIONAL CONSTRUCTION CONSULTANTS, INC., an Oklahoma corporation, Bill Brokaw and Paul Ketch, individually, Appellants,**

**v.**

**STATE of Oklahoma, ex rel. Gerald GRIMES, Insurance Commissioner,**

Summit Insurance Company of New York, a foreign corporation, Thomas Harnett, Superintendent of Insurance of the State of New York, and as Liquidator of Summit Insurance of New York, and Gerald Grimes, as Ancillary Receiver of Summit Insurance Company of New York, Appellees.

No. 53152.

Supreme Court of Oklahoma.

May 11, 1982.
As Corrected May 12, 1982.
Rehearing Denied June 29, 1982.

Robert F. Bourk, Gary W. Gardenhire, Bourk & Gardenhire, Oklahoma City, for appellants.

C. William Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee, Summit Ins. Co. of New York.

LAVENDER, Justice:

This matter is before us on a petition for certiorari to review a decision of the Court of Appeals on appeal from a district court adjudication of a claim filed by a creditor of a foreign insurance company (Summit Insurance Company of New York) domiciled in New York, where domiciliary delinquency proceedings are pending under the Uniform Insurers Liquidation Act of that state (McKinney's Insurance Law, §§ 517 to 524). Ancillary receivership proceedings were brought in Oklahoma under its Uniform Insurers Liquidation Act, 36 O.S.1981, § 1801 et seq. (recodified as 36 O.S.Supp. 1980, § 1901 et seq.). Appellants, Professional Construction Consultants, Inc., an Oklahoma corporation; Bill Brokaw and Paul Ketch, individually, (PCC) filed a creditor's claim under the Act.

The claim was based upon two insurance contracts wherein Summit (SIC) was surety for Brite-Side Construction, Inc., a subcontractor, wherein Summit guaranteed project completion and payment for all labor and materials expended in the construction of a public housing project contracted by Oklahoma City Housing Authority, wherein PCC was the prime contractor, and wherein the subcontractor agreed to do the rough framing work on the housing project for $241,300.

Construction commenced in August, 1974. In December 1974, subcontractor defaulted after having partially completed the contract. PCC gave formal notice of the

breach.[1] No remedial action was taken by SIC, and PCC completed the contract by late 1975.

The New York receiver declared September 28, 1976, as the final day by which creditors could file claims. PCC filed an itemized claim on August 4, 1976, for the total sum of $51,029.82. In January 1977, four months after the filing deadline, PCC filed an amended claim for $488,224.70. On May 16, 1977, PCC's claim was finally adjudicated and reported to the court by the ancillary receiver.

On December 27, 1977, at a pre-trial hearing before the district court, the court ruled:

1. The parties are not entitled to a jury trial. The trial will be conducted by the court.

2. PCC cannot increase the amount of its claim to any figure greater than asserted as of September 28, 1976.

3. PCC will not be allowed any recovery for anticipated loss of profits as a result of loss of bonding capacity as the same is not provided for in the bonding contracts.

4. PCC will not be entitled to damages in the form of a profit for services on completing the subcontractor's work as the same was not provided for in the bonding contracts.

At the conclusion of the trial, the district court rendered findings of fact and conclusions of law consistent with its pre-trial rulings. The trial court further found that: "After partially performing the contract and receiving payment of a little over $108,000, Brite Side Construction Company defaulted. At the time of the default, there was $136,585.35 left in the job for the completing of Brite Side's contract." Upon its stepping in and completing the job, PCC expended a net out-of-pocket cost for labor and materials in the sum of $88,081.05, "this being the amount claimed by reason of the (PCC) proof of loss filed with the ancillary

receiver on August 4, 1976, said claim being the last claim submitted by the plaintiff prior to the deadline for submitting claims of September 28, 1976." Since the amount of the claim as allowed by the trial court was less than the unused balance in the Brite contract, the trial court denied PCC's creditor's claim. PCC appealed.

Unless the total amount of PCC's claim as properly allowed exceeds the sum of $136,585.35, it must be disallowed, and, if approved, because it exceeds $136,585.35, it will be allowed only to the extent and in the amount that it exceeds $136,585.35 as a claim for pro rata distribution out of the distributable estate of SIC.

In view of our holding as hereinafter set forth, we do not deem it necessary to consider PCC's claim of error in the trial court's denying it a trial to a jury and holding that the validity and extent of its claim was triable only to the court.

We next consider whether, under the facts and circumstances of this case, the trial court should have allowed and considered the proffered amendment of the creditor's claim which increased the items and amount of the original claim, when the amended claim was filed approximately four months after the filing deadline set under and pursuant to the Uniform Insurance Liquidators Act.

It is said at the beginning of an annotation in 46 A.L.R.2d at p. 1185:

"The Uniform Insurers Liquidation Act deals with certain problems peculiar to the forced liquidation or reorganization of insurance companies having assets and liabilities distributed in two or more states. While the assets of an insurance company naturally have their situs mainly in the state of domicile of the company, a substantial portion thereof is normally scattered over the entire territory within which the company carries on its business. This is particularly true of the special deposits required by the laws of

1. PCC gave notice of possible breach to SIC as early as September 17. Another notice was given October 16. Finally, on December 6, 1974, notice was given that subcontractor had abandoned the project. Another notice to SIC on February 11, 1975, was followed by advice that SIC was in the hands of the New York receiver on February 19, 1975.

nondomiciliary states and of balances in the hands of insurance agents and policy premiums due but unpaid. Similarly the liabilities of an insurance company, consisting primarily of policy obligations, are also distributed over the several states in which the company does its business. Such wide distribution of assets and liabilities creates a formidable array of problems when liquidation, rehabilitation, or reorganization proceedings become necessary, and the equitable and expeditious solution of those problems is rendered the more difficult by wide differences in the provisions of the statutes of the several states regarding such matters as special deposits, preferred claims, securities, setoff, and the administrative and judicial procedures to be followed.

"The Uniform Insurers Liquidation Act, which was designed to facilitate delinquency proceedings by eradicating these difficulties, was approved by the National Conference of Commissions on Uniform State Laws in 1939 . . . .

"The purpose of the act is to secure equal treatment for all creditors wherever situated."

The portions of the Act pertinent to the time for filing of creditor claims thereunder are as follows:

Section 1918 B. "All claims filed in this state shall be filed with the receiver, whether domiciliary or ancillary, in this state on or before the last date for filing as specified in this article."

Section 1930 A. "If upon the granting of an order of liquidation under this article or at any time thereafter during the liquidation proceedings, the insurer shall not be clearly solvent, the court shall, after such notice and hearing as it deems proper, make an order declaring the insurer to be insolvent. Thereupon regardless of any prior notice which may have been given to creditors, the Insurance Commissioner shall notify all persons who may have claims against such insurer and who have not filed proper proofs thereof to present the same to him, at a place speci-

fied in such notice, *within four months from the date of entry of such order, or if the Insurance Commissioner shall certify that it is necessary, within such longer time as the court shall prescribe.* The last day for filing of proofs of claims shall be specified in the notice, and notice shall be given in a manner to be determined by the court." (Emphasis supplied.)

B. "*Proofs of claim may be filed subsequent to the date specified, but no such claim shall share in the distribution of the assets until all allowed claims, proofs of which have been filed before said date, have been paid in full with interest.*" (Emphasis supplied.)

Both the District Court of Oklahoma County and the Domiciliary Receivership Court fixed the 28th day of May, 1976 as the last day for the filing of creditor claims. However, both the order of the district court and the notice to creditors after setting the May 28, 1976, deadline, contain the following language: "and no such claim filed subsequent to May 28, 1976, shall share in the distribution of assets of said Receivership Estate until all allowed claims, proofs of which have been filed before said date have been paid in full with interest," showing that both contemplated the provisions of § 1930, as emphasized, *supra.*

It further appears from the record in this case that SIC was dissolved and placed in liquidation by order of the New York domiciliary court entered May 28, 1975. The deadline for filing creditor claims was extended to September 28, 1976. No proceedings were filed before the district court or entertained by that court seeking a court determination that it was necessary to further extend the time in which to file creditor claims.

Therefore, the issue before us is not whether the district court had the power to grant additional time in which to file creditor claims.[2] The issue is whether the time, as fixed by the court, having expired PCC as a creditor may be, or should be permitted

2. See 109 A.L.R. 1404.

to amend its claim, both as to items and amount, and have its claim be processed upon the same basis as creditor claims which are timely filed.

PCC proffered no evidence which would tend to explain or justify its failure to file the amended claim within the deadline period. Its sole exculpatory thrust is its assertion that no order of distribution has been made in the liquidation proceedings, and that no interested parties will be placed in a prejudicial position by reason of the court's allowing the amended claim.

*Askin v. Taylor-Skinner Pub. Co.*[3] relied upon by SIC is clearly distinguishable. There, a creditor filed an application to reopen a receivership matter after the funds in the hands of the receiver had been distributed and the receiver discharged, although the creditor had full knowledge of the pendency of the receivership and its effect upon his interest through distribution of funds in the hands of the receiver. It was there held that such creditor is bound to exercise reasonable diligence in filing and proving his claim, and his failure makes him guilty of laches. In the case before us, no order of distribution has been made and the delinquency proceedings are still pending.

While no cases specifically construing the Uniform Liquidation Act, §§ 1918 B, 1930 A have been found, we find nothing in those sections which constrains us to set them apart from the law applicable to liquidating receiverships generally. In that respect, case law is appropriately summarized by the authors of an annotation in 109 A.L.R. 1404 (1405) as follows:

"Frequently, courts of equity in the exercise of their inherent powers, have allowed belated claimants to file claims against insolvent estates after the expiration of the time fixed therefor by the order of the court, without regard to whether the delay was or was not excusable, where the circumstances were such

that to reject the claim would have been inequitable, and the allowance thereof would not be prejudicial to the rights of others, as where no dividend has as yet been paid on claims already filed, and the other creditors did not object to the allowance of the delayed claim, or where there would be a surplus remaining after the full payment of the duly filed claims, which, if the delayed claim were not allowed, would be paid back to the insolvent. In such cases equitable considerations outweigh the policy of quick and speedy administration of insolvent estates, and, as stated, the courts have under these circumstances frequently allowed the filing of a claim long after the expiration of the time fixed, without regard to whether the delay was excusable.[4]

\*    \*    \*    \*    \*    \*

"Where the limitation is statutory and is framed in such terms as to state or imply an absolute prohibition against the filing of claims after its expiration, it is generally held, with few exceptions, that filing before the expiration of the required time is a condition precedent to the right of recovery, and therefore no excuse, however meritorious will justify the delay or evade the prohibition."

Where the statutory deadline for filing claims is unequivocal, there is no occasion to weigh equities between the delay in winding up the affairs under receivership and in distribution of the property in receivership on the one hand, against the hardship imposed upon the tardy creditor on the other.

Here, the meaning of §§ 1918, 1930 is clear and categorical where, at least, as here, no showing had been made of any compelling excuse for delay in the filing of the claim. We therefore hold that the trial court properly allowed PCC's claim as filed up to the 28th day of September, 1976. The trial court committed error in rejecting consideration of the amendment to the claim

---

**3.**   176 Okl. 438, 56 P.2d 379 (1936).

**4.**   The later cases seem consonant with the text. For example, *First Wisconsin National Bank of*

*Milwaukee v. First National Bank,* Fla.App., 353 So.2d 960 (1978).

filed thereafter. But the amendment could only be considered in the distribution of the assets after all allowed claims, proofs of which have been filed before said date, have been paid in full with interest. Since it is apparent from the fact that SIC was dissolved and placed in liquidation by order of the New York domiciliary court on May 28, 1975, that SIC's assets are insufficient to pay the timely claims filed against it together with interest thereon accrued to that date, the error was harmless and no grounds for reversal.

■ Where, as in the case before us, the distributable assets of the insurance company in delinquency proceedings are insufficient to pay the allowable claims of all of the general creditor claimants, each claim bears interest only to the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order under the Uniform Insurers Liquidation Act.[5] Therefore, no interest was allowable on PCC's claim beyond that accrued to the 28th day of May, 1975.

■ In the case before us, the parties have stipulated that the reasonable amount of PCC's attorney fees incurred in the trial of its claim against the insurer is $26,000, leaving for our determination the question of whether such attorney fees are properly allowable as a part of PCC's claim.

Appellees do not appear to seriously contend that such fees are not recoverable under 12 O.S.1981, § 936 as construed in *E. V. Coxt Const. Co. v. Brookline Associates*,[6] and *Pipeline Industry Ben. F. v. Aetna Cas. & Sur. Ins. Co.*,[7] and the parties having stipulated as to the reasonable value thereof, the same were includible in PCC's proven claim.

■ A different issue is raised as to attorney fees incurred by PCC on appeal from the trial court. There was no stipulation as to the reasonable value of attorney fees incurred by PCC on appeal, and no proof proffered as to the same. In *State ex rel. Burk v. City of Oklahoma City*[8] this Court clearly enunciated the standards by which courts are to determine and fix the amount of attorney fees to be awarded, with the following admonition (p. 663):

> "Hereafter, attorneys in this state should be required to present to the trial court detailed time records showing the work performed and offer evidence as to the reasonable value for the services performed for different types of legal work. Reasonable value of services should be predicated on the standards within the local legal community. This will enable trial courts to remove the fixing of attorney fees, not only in this type of action, but in every case, from the realm of speculation and guesswork into the area of simple mathematical computation. The trial court may then, with certainty, determine the compensatory fees."

The requirements thus enunciated apply equally to determining reasonable attorney fees incurred on appeal to this Court. Taxation of costs by the Supreme Court on appeal must be sought by motion in postdecisional state of appeal but before mandate is issued,[9] and pursuant to Rule 32 of the Rules of the Supreme Court. Determination of attorney fees to be awarded as a part of the costs on appeal by this Court is here premature.[10] But when ripe for determination, attorney fees may be awarded to the successful party by either the Supreme Court, if the case is appealed, or by the trial court.[11]

5. *Joplin Corp. v. State ex rel. Grimes*, Okl., 570 P.2d 1161 (1977); 66 Am.Jur.2d Receivers, § 271; 69 A.L.R. 1210.

6. Okl.App., 604 P.2d 867 (1979).

7. Okl.App., 503 P.2d 1286 (1972).

8. Okl., 598 P.2d 659 (1979).

9. *Riffe Petroleum Co. v. Great Natl. Corp., Inc.*, Okl., 614 P.2d 576 (1980).

10. *Hamilton v. Telex Corp.*, Okl., 625 P.2d 106 (1981).

11. *Hamilton v. Telex Corp., id.; Natl. Educ. Life Ins. Co. v. Apache Lanes, Inc.*, Okl., 555 P.2d 600 (1976).

■ PCC claims damages for impaired bonding capacity and consequential loss of contracting capacity as a part of its claim against SIC. No such liability is either implicit or implied from the terms of the performance bonds of which SIC is insurer. Under the terms of the bond contract, liability is limited to payment for labor, materials, and expenses incurred to complete and deliver a lien-free project, and does not include such incidental damages as alleged loss of contracting capacity or impairment of bonding capacity.

■ Since the amount of PCC's claim as properly allowed is less than $136,585.35, the amount of the unused balance in the Brite contract, the trial court's judgment that PCC's claim against SIC in the delinquency proceedings must be denied is hereby affirmed.

IRWIN, C. J., BARNES, V. C. J., and DOOLIN, HARGRAVE, OPALA, and WILSON, JJ., concur.

SIMMS, J., concurs in part and dissents in part.