**Carol Janet SMITH, Appellant,**

v.

**Russell Clark SMITH, Jr., Appellee.**

**No. 59063.**

Court of Appeals of Oklahoma,
Division No. 4.

Nov. 15, 1983.

Released for Publication by Order
of the Court of Appeals
Dec. 19, 1983.

Richard T. Garren, Tulsa, for appellant.

Lantz McClain, Sapulpa, for appellee.

BRIGHTMIRE, Presiding Judge.

Woman complains of the trial court's divorce decree being reversibly inequitable as to the award of support alimony, division of property and in the assessment of attorney fees. We find no abuse of discretion except as to the award of attorneys fees.

## I

After 18 years of marriage the woman sued the man for a divorce and resolution of other issues incident to the marriage. Evidence adduced at trial in August 1982 disclosed that the man owned and operated Professional Employment Service, Inc.—an employment agency which had been doing well until the 1980 recession set in. Though a large number of such agencies had gone broke, the man managed to keep Professional alive, though income from it was way off.

The woman, on the other hand, had supervisory and investigative experience in the field of credit. She had done insurance claims adjusting, held factory jobs and engaged in real estate and other type sales work. After three years of selling real estate she enrolled in Tulsa Junior College where she undertook some liberal arts courses and "signed up to go into [the] pari-legal [sic] assistant [program] this Fall, which is a two year course." At the time of

trial the woman was working part-time as a credit clerk at Cities Service.

Two children were born during the marriage—two boys who at the time of trial were 17 and 14 years of age.

Evidence concerning the assets of the parties is not the best. What there is indicates an accumulation of less than what would be expected of a couple who enjoyed substantial annual incomes during the late seventies. But the parties lived high, spending, for instance, about $50,000 during 1981. Then the recession hit and it adversely affected both their income and their investments.

First, the parties had a home worth about $80,000 subject to a $35,000 first mortgage loan balance. They had furniture worth about $10,000, a 1979 Mercury car and a 1981 Buick Regal. They had a lot on Lake Eufaula worth maybe $7,500 subject to a $1,600 mortgage, a rental house in Sapulpa, a $5,100 money market "certificate," a $5,000 boat, and a $3,000 investment in a mobile home development.

Evidence concerning the value of the personnel concern was general in nature and was primarily to the effect that the success of the business depended largely on the personability and ability of the man and for that reason was not worth a great deal without him, even in good times.

At the close of the evidence the trial judge ordered the house sold and the net equity divided equally. He gave the woman interim possession of the house, title to the rent house, the Mercury car, the furniture, half of some investment club stock, half of the common stock and half of the certificate of deposit after the attorney fees of both parties are paid out of it. To the man, the court gave the lake lot, the Buick, a clock, vase, personal items, tools, pinball machine and the boat, and the other half of the asset interests given the woman. He also was awarded the stock in his business.

The man was awarded all the debts of the parties, except the payments on the rent house awarded to the woman, which, ex-cluding the mortgage on the house, amounted to $118,123.11.

The woman was given custody of the two children. The man was ordered to pay $150 per month for support of each child, to maintain health and accident insurance on them, and to pay the woman $300 a month for her support for 24 months.

## II

The woman first says the amount of alimony awarded is inequitable and resulted from an abuse of discretion. In support of this conclusion she argues that the combined total of child support, alimony and her earnings amount to $831, less than a fourth of the $3,462 she told the trial judge she needed per month. The woman does not build her case on justifying her estimated need but lists several criteria to be considered including the husband's "earning capacity and ability to pay," her contribution to the property accumulation, the duration of the marriage, her opportunity for employment, her mode of living, her education, the age of the children, and the parties' pre-divorce station in life.

Each of these criteria, except the second one, has been mentioned in one case or another as having some significance in a particular factual situation. Moreover, there are many more not mentioned by the woman. Most, if not all, of these cases pre-date the law which was in force at the time this decree was rendered, namely, 12 O.S.1981 § 1278. This statute was substantially and significantly amended in 1975 and placed each of the marital parties on an equal footing. Both the man and the woman bear a support duty, each toward the other, and the criterion for allowance is what "the court shall think reasonable." Payment of the alimony awarded is to be made in a manner the "court may deem just and equitable."

With regard to resolving the alimony issue, it is scarcely possible for the court to apply every conceivable criteria in every case. The record here does not disclose what exactly led the trial judge to consider as reasonable the alimony award he made.

In reviewing the record we find certain facts and circumstances that we think may have entered into his thinking.

■ The parties enjoyed an ever increasing annual income during the boom years of 1976 through 1981. Neither party seems to have exercised much frugality. Spending went forward unrestrained. Then in 1981 the revenue bubble burst. The man's business was particularly sensitive to the then rising unemployment levels and the concomitant absence of job opportunities. Evidence there is that the man's business is one of a few to survive the economic shock and to do so he had to deplete capital assets and borrow money. His income had suffered a dramatic drop while his obligations had undergone an upsurge. His business at time of trial was on the verge of bankruptcy. His health was poor as a result of diabetes, Hodgkin's disease, retinopathy and kidney irregularities.

The woman on the other hand was in good health and possessed a number of marketable skills. The trial judge's decree recognizes what the woman seems to ignore— economic reality. By this we mean that had the parties remained married they would have had to make a drastic reduction in their living expenses. A divorce, of course, could not enhance failing financial resources but rather make a bad economic situation worse.

The woman does not suggest an amount to which she thinks the alimony award should be increased, and we cannot readily think of one either. The circumstances are such that we cannot say that the amount of alimony fixed by the trial judge is unreasonable.

### III

■ The woman's second contention— that the property division order is inequitable—rests on the conclusion that the man's business is worth more than the court found it to be. Again the argument is founded on a recitation of abstract criteria relating to evaluating close corporations unaccompanied by a specific appraisement. The only specific value mentioned in the record is $926—the amount mentioned by one expert as being the company's net book value. Granted, in trying to evaluate a close corporation such as we have here, there are two or three recognized theories that have been used by various experts. The man's expert used but one such theory—one that the woman says is also used by the IRS—and she thought a different one should have been used. She may be correct and her essay setting forth the reasons why a different appraisal theory should have been used may have a solid economic foundation, but there is one thing of controlling importance her argument lacks—it is not supported by any evidence in terms of concrete figures.

We cannot say under these circumstances that the court was bound to place a higher value on the company than he did or that the challenged property division was not "just and reasonable."

### IV

■ Finally we come to the woman's third proposition, which pertains to the manner in which the court disposed of the attorneys fees problem, namely, by ordering each party's attorney to be paid $2,000 out of a $5,100 money market fund and the remainder divided between the parties. The bifurcated argument is that (1) none of the 12 foundational criteria pertaining to setting attorneys fees listed by the court in *State ex rel. Burk v. City of Oklahoma City*, Okl., 598 P.2d 659 (1979), was proved, and (2) the woman was made to pay all her own fees—a decision that ignored her ability, or rather her lack of ability, to bear such expense.

To begin with, we are not sure we understand what the woman is driving at with regard to the first point. Her main objection seems to be that the summary disposition of the attorneys fee matter was arbitrary and disregarded the means and ability of the parties to pay.

We are not persuaded that the court disregarded either the parties' ability to pay or their means. We do think, however, the

unusual order was arbitrary and exceeded the court's discretionary powers insofar as it sets the fee each party is to pay his own lawyer. We can find no stipulation or other valid foundation for the procedure followed by the court in this regard.

The attorneys fee order is, therefore, vacated. The money market fund involved, which at that time amounted to about $5,100, is hereby equally divided between the parties and each party is left to pay his or her own attorneys fee incurred in both the trial and appellate courts. The costs of this action and appeal are taxed against the man.

DE MIER and STUBBLEFIELD, JJ., concur in result.