1998 OK 130

Marilyn MORGAN, as Guardian
of Donald Wayne Quinton,
Plaintiff–Appellee,

v.

GALILEAN HEALTH ENTERPRISES,
INC., d/b/a Beggs Living Center and
John Doe, Defendant–Appellant.

No. 88,957.

Supreme Court of Oklahoma.

Dec. 22, 1998.

Rehearing Denied May 11, 1999.

Ray H. Wilburn, Scott R. Taylor, Wilburn, Masterson & Smiling, Tulsa, Oklahoma, for Appellant.

Stratton Taylor, Vani Singhal, Taylor, Burrage, Foster & Singhal, Claremore, Oklahoma, for Appellee.

Karen M. Grundy, Best, Sharp, Holden, Best, Sullivan & Kempfert, Tulsa, Oklahoma, for Amici Curiae, Eufala Manor Nursing Home, Oklahoma Nursing Homes, Ltd., and Ranch Terrace Nursing Homes, Inc.

OPALA, J.

¶ 1 The issues presented on appeal are: (1) Is the plaintiff entitled to a prevailing-party counsel-fee award authorized by the provisions of the Nursing Home Care Act (the "Act") [1]? and (2) if so, was there error in basing the amount of that award upon the terms of a contingent-fee contract between the plaintiff and her counsel? We answer both questions in the affirmative.

I

## THE ANATOMY OF LITIGATION

¶ 2 Marilyn Morgan ("Morgan"), guardian of Donald Wayne Quinton ("Quinton"), brought this action against Galilean Health Enterprises, Inc., d/b/a Beggs Living Center, and John Doe, ("Galilean"), alleging that Galilean had been negligent in caring for Quinton, a mentally impaired individual, who was a resident of the Beggs Living Center. In August of 1993, Quinton suffered serious personal injuries as a result of an apparent beating. Morgan claimed that Galilean failed to prevent the abuse and neglected to secure prompt medical attention for Quinton's injuries.

¶ 3 The court instructed the jury that, with respect to Quinton's care, Galilean was subject to certain statutory duties imposed by the Act.[2] The jury returned a general verdict for Morgan, awarding her $500,000 in compensatory and $250,000 in punitive damages. Galilean timely appealed from the judgment on jury verdict.

¶ 4 Morgan moved for a postjudgment award of an attorney's fee. The trial court ruled that because "violations of the Act" were in issue at trial, Morgan was entitled to a prevailing-party counsel-fee award.[3] The award was set at $437,370.50 with interest. The record as well as the text of the entered memorial of the postjudgment proceedings (on Morgan's application for an attorney's fee) irrefutably demonstrate that the court used the contingent-fee contract between Morgan and her attorney as the basis for computing the amount of the counsel-fee

---

1. 63 O.S.1991 §§ 1–1901 et seq., as amended. The section of the Act with which we are here concerned has been amended several times since its enactment, including most recently by Laws 1996, c. 231, § 4, eff. July 1, 1996. Quinton's injuries were alleged to have occurred on or about August 8, 1993. *We will hence cite to the 1992 Supp., which sets out the Act in force at the time this claim arose.*

2. The jury was charged in Instruction No. 11 that, in addition to the common law duty of care, Galilean was also subject to the statutory duties

set forth at 63 O.S.Supp.1992 § 1–1918(F)(5), (10), and (11).

3. The order states in pertinent part:

"... IT IS THE ORDER, JUDGMENT AND DECREE of the Court as follows:

That the Plaintiff as the prevailing party herein is entitled to recover from the Defendant attorney's fees, *having established violations of 63 O.S. § 1–1918 by the Defendant;* ..." (Emphasis added)

award.[4] Galilean argues that a counsel-fee award was not authorized by law; alternatively Galilean urges that, if a fee allowance was proper, the method used to calculate the amount awarded was erroneous.

¶5 Before this court reached Galilean's appeal for decision, the parties settled the obligation imposed by the underlying judgment. By their stipulation, appellate review is now confined to whether plaintiff is entitled to a counsel-fee award, and if so, whether its quantum is legally correct.[5] Galilean urges that the award must be reversed for the following four reasons: (1) this was a common-law negligence action in which a counsel-fee award is not authorized, (2) the trial court's jury instruction—incorporating provisions of the Act—was given in error and cannot hence serve as a predicate for a counsel-fee award, (3) the trial court incorrectly read the Act as authorizing a counsel-fee award, and (4) if a counsel-fee award was indeed the plaintiff's due, the trial court erred in computing the award *solely upon* the terms of the contingent-fee contract between Morgan and her attorney.

¶6 We hold that (a) this action was submitted to the triers not solely as a common-law tort, but also as a breach of duties imposed by the Act, and (b) the trial court, in granting a prevailing-party counsel-fee award, erred in allowing the contingent-fee contract (between the plaintiff and her counsel) to serve as the sole basis for calculating the amount of the attorney's fee.

## II

### MORGAN'S LAWSUIT WENT TO THE JURY NOT SOLELY AS A COMMON-LAW TORT, BUT ALSO AS A BREACH OF DUTIES IMPOSED BY THE ACT

¶7 Galilean argues that Morgan's suit *was tried as a common-law negligence action*, not as a claim for breached duties imposed by the Act. It contends that the Act's provisions that relate to an attorney's fee award are hence unavailable to Morgan. We must disagree. In its Instruction No. 11, the court clearly charged the jury that it could consider whether Galilean had breached duties owed to Quinton under the Act.[6] Whatever the theory of Morgan's lawsuit may have been at its inception or at trial, the jury's verdict rests upon an instruction which incorporated provisions of the Act.[7] The verdict is hence to be viewed as the triers' response to the theory submitted in that

---

4. Following the text set out *supra*, note 3, the court's order continued as follows:

"...
That the contingent fee contract in the amount of 50% of the judgment plus prejudgment interest entered into between the Plaintiff and her attorney shall be the basis for the fees awarded; ... " (Emphasis added)

5. Galilean's petition-in-error was filed in this court on 24 February 1997, seeking relief from the judgment on jury verdict and from certain postjudgment rulings. Subsequently, the parties settled the controversy over the underlying judgment; their report of settlement was filed in this court on 17 April 1997; a Release in Satisfaction of Judgment was filed below on 1 May 1997. On 19 June 1997 Galilean filed its *amended petition in error that confines this appeal to error,* if any, in the award of an attorney's fee. Galilean challenges neither the jury verdict nor its damages awards. *The sole issue before us is the legal correctness of the counsel-fee award.*

6. Instruction No. 11 states:

"In addition to the duty to exercise ordinary care *there are also duties imposed by statutes.* (Emphasis added) If you find that a person

violated any one of the following statutes and the violation was the direct cause of the injury, then such violation in and of itself would make such person negligent. There was in force and effect in Oklahoma at the time of the occurrence the following statutes and regulations:
(a) Every resident shall have the right to receive adequate and appropriate medical care consistent with established and recognized medical practice standards within the community.
(b) Every resident shall have the right to receive courteous and respectful care and treatment.
(c) Every resident shall be free from mental and physical abuse."

7. Whenever, as here, a claim goes to the jury on *two* theories of relief, *only one* of which allows a prevailing party its counsel-fee award, a general verdict for the plaintiff will authorize a postjudgment inquiry into the quantum of counsel-fee recovery to the plaintiff. *United General Ins. Co. v. Crane Carrier Co.*, 1984 OK 47, ¶15, 695 P.2d 1334, 1337; *Cf. Olansen v. Texaco Inc.*, 1978 OK 139, ¶47, 587 P.2d 976, 988 (Olansen denied the victorious plaintiff's plea for an attorney's-fee award because he won *solely* on a tort theory).

instruction.[8] By the parties' settlement of the underlying judgment,[9] we now stand barred from probing into whether the evidence adduced on behalf of the plaintiff's cause warranted the giving of that instruction.[10] In short, Morgan's lawsuit must now be regarded as having been submitted as a claim within the purview of the Act.

## III

### THE ACT *EXPLICITLY* CREATES A STATUTORY TORT WITH A PRIVATE RIGHT OF ACTION

■ ¶ 8 We turn now to whether the inclusion of Instruction No. 11 may in this case serve as authority for an attorney's-fee award. In that instruction, the court charged that, apart from the common-law duties owed to Quinton, Galilean was also bound by certain statutory obligations. The instruction then quoted portions of three of the eighteen "rights" conferred by the Act on nursing home residents (the "Nursing Home Patients' Bill of Rights").[11] Although it is conceded that violation of any of these rights can bring about the imposition of criminal penalties or trigger the process for administrative remedies, Galilean urges that the Act recognizes *only those private actions* that are prosecuted for injunctive or preventative relief. We disagree. The terms of 63 O.S.Supp.1992, § 1–1918(F) create what we have previously referred to as a "statutory tort," i.e. a legislatively-crafted, non-contractual duty, unknown to the common law, for the breach of which an action *ex delicto* will lie.[12] While the language of the Act is not a model of clarity and precision, its terms are clear enough to divine a legislative intent to fashion a private right of action[13] for nursing home residents (or their guardians) to redress a violation of rights conferred by the Act.[14] Liability for a statutory tort is incurred when it can be shown that the plaintiff's injury resulted from a statutory viola-

8. A general verdict includes within its terms a finding favorable to the prevailing party *upon every material issuable fact. Garrison v. Bonham,* 207 Okl. 599, 251 P.2d 790, 793 (1953); *J.R. Watkins Co. v. Chapman,* 197 Okl. 466, 172 P.2d 768, 769–770 (1946).

9. In accordance with the parties' stipulation, we affirm the judgment on jury verdict. *See, State ex rel. Comm'rs. of the Land Office v. Taylor,* 193 Okl. 405, 144 P.2d 114 (1943); *Schlitz v. Schlitz,* 138 So.2d 806 (Fla.App.1962).

10. The restricted scope of our review, thrust on the court by the parties' stipulation, *bars a broader probe* into both the evidentiary underpinnings and the legal correctness of the critical charge given in Instruction No. 11, *supra,* note 6. Settled law of the case requires us to now treat that jury charge as error-free in its effect on the nisi prius judgment. See *Morrow Development Corp. v. American Bank and Trust Co.,* 1994 OK 26, ¶ 2, 875 P.2d 411, 413 n. 2. Our present inquiry is accordingly confined much more narrowly—*to whether the inclusion of Instruction No. 11 may in this case be invoked as the trial court's authority for the fee award here in contest. It is only the latter question that we settle today by giving an affirmative answer.*

11. Title 63 O.S.Supp.1992 § 1–1918(B).

12. *Cruse v. Atoka Bd. of County Comm'rs.,* 1995 OK 143, ¶ 11, 910 P.2d 998, 1010 (Opala, J., with whom Simms, J., joined, dissenting).

13. This action is not to be confused with claims under statutes held to create an *implied* private cause of action. In *Holbert v. Echeverria,* 1987 OK 99, ¶¶ 7–8, 744 P.2d 960, 963, the court adopted a three-pronged test for determining whether a private right of action may be *implied* in a regulatory (public) statute. Today's pronouncement does nothing to change or modify the teachings of *Holbert.* Because we hold that the Act *explicitly* creates a statutory tort, an implied right-of-action analysis would be redundant. The Act provides a right of action for residents of nursing homes to redress specific wrongful acts and omissions. It allows for the recovery of damages. In *WRG Construction Co. v. Hoebel,* 1979 OK 125, 600 P.2d 334, we concluded that the statute there dealt with an explicitly created *new cause of action ex delicto* rather than merely with an expanded form of recovery that lies within the workers' compensation regime. The *WRG Construction* analysis is pertinent here.

14. Title 63 O.S.Supp.1992 § 1–1918(F). This section provides in pertinent part:

"In addition to the penalties provided in this section, *an action may be brought* against an individual *by any resident who is injured by any violation of this section,* ... If damages are alleged and proved in the action, the plaintiff shall be entitled to recover from the defendant the actual damages sustained by the plaintiff. If it is proved in an action that the defendant's conduct was wilful or in reckless disregard of the rights provided by this section, punitive damages may be assessed."

tion and that the plaintiff falls into a class of persons whom the legislature intended to protect.[15] By giving Instruction No. 11, the trial court recognized that Quinton's proof was sufficient to invoke his statutory right.[16]

¶ 9 *WRG Construction v. Hoebel*[17] provides some guidance for gauging legislative language that creates a statutory tort. An intent to create a cause of action is shown where there are explicit references in the enactment's text to one's right to vindicate a breached duty.[18] Subsection F of § 1–1918 of the Act is replete with references to *remedies* for a "violation." [19] In the context of the statute the word "violation" is unmistakably used as a synonym for the concept of "breached duty." The so-called rights enumerated in the Act shape the standard of care to govern in the nursing home setting. An operator's breach of any enumerated duty gives rise to a private right of action under the Act.

¶ 10 The episode that formed the basis for Morgan's claim is one of the scenarios for

15. *Bellikka v. Green*, 306 Or. 630, 762 P.2d 997, 1001 (1988).

16. Galilean argues that the right of action created by the Act may be pressed only against "individuals," and that Galilean does not fit this definition. *This argument lacks merit.* The word "individual" includes corporations. According to the terms of 25 O .S.1991 § 16, "[t]he word 'person,' except when used by way of contrast, includes not only human beings, but bodies politic or corporate" as well. The word "individual" within the meaning of the Act is a synonym for "person." Its scope is broad enough to include corporations. *See Nelson v. U.S. Fire Insurance Co.*, 259 Cal.App.2d 248, 253, 66 Cal.Rptr. 115, 118 (1968); *National Accounting Co. v. Dorman*, 11 F.Supp. 872, 873 (E.D.Ky.1935), *aff'd per curiam* 295 U.S. 718, 55 S.Ct. 835, 79 L.Ed. 1673. Galilean is hence an *individual suable* under the Act.

17. 1979 OK 125, 600 P.2d 334.

18. *WRG Construction, supra* note 17 at ¶ 5, at 336. There, the court defined "cause of action" as "a right to redress in ordinary courts [according] to the course prescribed by the code of civil procedure."

19. The terms of 63 O.S.Supp.1992 § 1–1918(F) are:

which the Act plainly intends to provide a remedy. By stipulation of the parties, no corrective relief may now be sought from the judgment (on jury verdict), the terms of which imposed liability on Galilean for the breach of statutory duties owed to Quinton.

## IV

## THE ACT AUTHORIZES THE PREVAILING PARTY IN A PRIVATE SUIT FOR BREACH OF A DUTY PRESCRIBED BY THE ACT TO RECOVER AN ATTORNEY'S FEE FROM THE VANQUISHED OPPONENT

¶ 11 When called upon to assess litigation expenses, we continue to stand firmly committed to the American Rule.[20] Except where a statute or contract provides otherwise, every litigant is responsible for its own litigation expenses, including the attorney's fee.[21] No contractual obligation for the payment of an attorney's fee in this case was ever created between Morgan and Galilean.

"F. In addition to the penalties provided in this section, an action may be brought against an individual by any resident who is injured by any *violation* of this section, or who shall suffer injury from any person whose threats would cause a *violation* of this section if carried through, may maintain an action to prevent, restrain or enjoin a *violation* or threatened *violation*. If a *violation* or threatened *violation* of this section shall be established in any action, the court shall enjoin and restrain or otherwise prohibit the *violation* or threatened *violation* and assess in favor of the plaintiff and against the defendant the cost of the suit, and the reasonable attorney fees incurred by the plaintiff. If damages are alleged and proved in the action, the plaintiff shall be entitled to recover from the defendant the actual damages sustained by the plaintiff. If it is proved in an action that the defendant's conduct was willful or in reckless disregard of the rights provided by this section, punitive damages may be assessed." (Emphasis supplied.)

20. *See Holbert v. Echeverria, supra* note 13, at ¶ 17, at 965; *Moses v. Hoebel*, 1982 OK 26, ¶ 5, 646 P.2d 601, 603; *City Nat'l Bank & Trust Co. v. Owens*, 1977 OK 86, ¶ 11, 565 P.2d 4, 7. *Cf. Pierson v. American National Bank of Shawnee*, 1958 OK 111, ¶ 5, 325 P.2d 426, 428.

21. *City Nat'l Bank & Trust Co. v. Owens*, 1977 OK 86, ¶ 11, 565 P.2d 4, 7.

Hence, Morgan may secure an attorney's fee *only* if that award is authorized by statute.

Subsection F of § 1–1918[22] of the Act provides in part:

"... If a violation or threatened violation of this section shall be established *in any action*, the court shall *enjoin and restrain* or otherwise prohibit the violation or threatened violation and assess in favor of the plaintiff and against the defendant the cost of the suit, and *the reasonable attorney fees incurred* by the plaintiff...." (Emphasis added)

We regard the phrase "a violation ... established in any action" as sufficiently broad to mean that costs, including a reasonable attorney's fee, are the victor's due when any statutorily authorized remedy for redress under the Act is successfully prosecuted.[23] Morgan *did establish a violation* of three subsections of § 1–1918,[24] and the jury verdict afforded her "redress" for those breaches. Morgan's statutory demand for an attorney's fee hence rests on the text's explicit mandate that the court "shall ... assess" against the vanquished defendant the costs of the suit and a reasonable attorney's fee. The statutory command is plainly invocable as a sanctioned departure from the American Rule. The trial court merely followed the legislative directive when it declared the fee was recoverable.

22. *See supra*, note 19 for the rest of the text of Subsection F.

23. See, *WRG Construction*, supra, note 17 at ¶ 8, at 336–337.

24. For the three violations of the Act established in this lawsuit, see the text of Jury Instruction No. 11, *supra* note 6.

25. Galilean argues that the underlying contingent-fee contract between Morgan and her counsel violates the terms of 5 O.S.1991 § 7, which provide in pertinent part: "It shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim not to exceed fifty percent (50%) of the net amount of such judgment as *may be recovered, or such compromise as may be made, whether the same arises ex contractu or ex* delicto, and

## V

## THE QUANTUM OF AN ATTORNEY'S–FEE AWARD ASSESSED AGAINST A LOSING LITIGANT CANNOT REST UPON A CONTRACT BETWEEN THE PREVAILING PARTY AND THAT PARTY'S LAWYER, BUT MUST RATHER BE BASED UPON THE REASONABLE VALUE OF NECESSARY LEGAL SERVICES PROVIDED TO THE PREVAILING PARTY IN THE ACTION

¶ 12 Having determined that the trial court was duty-bound to award the victor an attorney's fee, we proceed to examine whether the quantum awarded was correct. On this record we must hold that it is not.

¶ 13 First, the trial court erred in resting its calculation of the attorney's fee award on the contingency-fee contract between Morgan and her counsel, a contract to which Galilean was a stranger. A fee contract is a matter between the client and the attorney. The amount due under that contract may not serve as a basis for computing an attorney's fee award against the unsuccessful party. It merely reflects the value of those services to the parties bound by that agreement *inter se*.[25] It is not binding on the court in awarding an appropriate attorney's fee.[26] By tying the attorney's fee award to the contingent-fee contract between Morgan and her counsel, the trial court impermissibly bound Galilean to the terms of a

no compromise or settlement entered into by a client without such attorney's consent shall affect or abrogate the lien provided for in this chapter...." (Emphasis added) Because we hold today that the contingent-fee contract between a client and her attorney does not form the basis for an award of an attorney's fee against a third party, Galilean's argument is moot. Galilean is not harmed by the existence of the contract and hence lacks standing to challenge its terms.

26. *A contingent-fee arrangement is a matter between the client and the client's attorney. It is not binding on the court. Green Bay Packaging v. Preferred Packaging*, 1996 OK 121, ¶ 48, 932 P.2d 1091, 1099; *Wise v. Johnson Controls, Inc.*, 1989 OK CIV APP 63, ¶ 6, 784 P.2d 86, 87, *overruled on other grounds by Wilson v. Hess–Sweitzer & Brant, Inc.*, 1993 OK 156, 864 P.2d 1279; *Thompson v. Andover Oil Co.*, 1984 OK CIV APP 51, ¶ 28, 691 P.2d 77, 84–85.

contract to which it was not a party. In this the trial court erred.

¶ 14 Second, an attorney's fee must in every instance be reasonable.[27] This is so whether the fee is to be paid by the lawyer's client or by the losing litigant. The criteria for determining a reasonable attorney's fee stand declared in *State ex rel. Burk v. City of Oklahoma City.*[28] We there held that the correct procedure for arriving at a reasonable fee is (a) first to determine the compensation based on an hourly rate and (b) then to enhance it by adding an amount arrived at by applying factors such as those cited in *Burk* and taken from federal court practice or those that are provided in Rule 1.5 of the Oklahoma Rules of Professional Conduct.[29] The contingent-fee character of the representation is but one factor to be considered in setting the fee award.[30] Its use as the sole factor is *ipso facto* erroneous.

¶ 15 Third, unless the prevailing party and the losing litigant tender a stipulated sum as the quantum to be awarded,[31] *permissible recovery must be set upon and supported by evidence presented in an adversary proceeding,*[32] in which the facts and computation upon which the trial court rests its determination are set forth *in the record* with a high degree of specificity.[33] An attorney's-fee award will not be disturbed absent a demonstration of abused discretion.[34]

¶ 16 In *Burk*, we imposed upon lawyers the obligation to provide for the trial court the data necessary to document the method used to arrive at an attorney's-fee award. Lawyers must present to the trial court detailed time records showing the work performed together with evidence of the reasonable value of different types of legal work

---

**27.** Rules of Professional Conduct, 5 O.S.1991 Ch. 1, app. 3–A, rule 1.5. The federal court approach to this question also is based on *reasonableness* of the necessary legal services' value. *Robinson v. City of Edmond*, 160 F.3d 1275 (10th Cir.1998).

**28.** *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

**29.** The terms of *Rule 1.5 of the Rules of Professional Conduct, supra,* note 27, provide:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

In *Burk, supra,* note 28, we held that along with the standards set forth by the Oklahoma Rules of Professional Responsibility, trial courts in this state may apply the standards utilized by the federal courts. See *Johnson v. Georgia Highway*

*Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The federal standards are substantially similar to those contained in Rule 1.5, and an exhaustive application of either list will almost always lead to a just and reasonable result. *See also Robert L. Wheeler, Inc. v. Scott*, 1989 OK 106, 777 P.2d 394; *Robert L. Wheeler, Inc. v. Scott*, 1991 OK 95, 818 P.2d 475.

**30.** *Brashier v. Farmers Ins. Co. Inc.*, 1996 OK 86, ¶ 11, 925 P.2d 20, 25. Where, as here, the lawyer's compensation is contingent, the trial court must adjust upward the basic hourly rate by allowing a risk-litigation premium based on the likelihood of success at the outset of the representation. *Id.* at n. 22. See also *Oklahoma Turnpike Authority v. New Life Pentecostal Church of Jenks*, 994 OK 9, ¶ 14, n. 21, 870 P.2d 762, 766, n. 21.

**31.** Unless the quantum of the fee to be awarded is stipulated, the allowance must be based on adduced evidence. *See, e.g., Professional Const. Consultants, Inc. v. State ex rel. Grimes*, 1982 OK 61, ¶ 22, 646 P.2d 1262, 1268; *Cook v. Alexander*, 1965 OK 128, ¶ 23, 405 P.2d 990, 993. *Cf. Antrim Lumber Co. v. Bowline*, 1969 OK 161, 460 P.2d 914.

**32.** *Cf. Burk, supra,* note 28 at ¶ 20, at 663; *Oliver's Sports Center, Inc. v. Nat'l Standard Ins. Co.*, 1980 OK 120, ¶ 8, 615 P.2d 291, 295.

**33.** See *Burk, supra,* note 28 at ¶ 22, at 663.

**34.** *Burk, supra* note 28, at ¶ 22, at 663; *Wise v. Johnson Controls, Inc., supra,* note 26 at ¶ 8, at 87.

based on local standards.[35] Moreover, lawyers must present to the trial court evidence relating to one or more of the factors permitting the court to enhance the fee beyond the calculated hourly rate.[36]

¶ 17 The record is crystal-clear that the award here *was based solely* upon the provisions of the contingent-fee contract (between Morgan and her counsel).[37] *The trial court mistakenly perceived that the task of setting the quantum of an attorney's fee was completed by computing the amount the prevailing party owed her own lawyer based on the terms of their agreement.* There is here no showing that any other factors were either explored or considered. Without the requisite probative support, we cannot test the reasonableness of this award.

¶ 18 On review of any nisi prius counsel-fee award made to a prevailing party, this court is *utterly dependent* on the proof adduced below in an adversary proceeding. Where as here the fee to be paid by the loser was set entirely by criteria of recovery facially shown *not* to be permissible—the victor's contingent-fee contract with her lawyer—the award is erroneous as a matter of law and must be reversed for want of requisite evidentiary support. In short, this award's reasonableness cannot be tested for want of a record.

## VI

## SUMMARY

¶ 19 The Act (a) *creates a statutory tort* with a private right of action conferred on harmed patients and (b) provides for the prevailing party's recovery of an attorney's fee in a claim for breach of a statutory duty. The correct measure of recovery under a statute authorizing a counsel-fee award to the victor is the reasonable value of necessary legal services rendered to the prevailing party. The contingent-fee arrangement is just one of many factors that may be considered in determining the reasonable quantum to be awarded, *but* the amount of the contingent fee (that would be due to counsel for the winner under their contingent-fee contract) may not be used as determinative of the reasonable value of the services for which the award is to be made.

¶ 20 The error on which we reverse today *is shown on the face of the award's memorial.* It consists of using the wrong criteria, to the exclusion of those which are legally required, to calculate the recovery sought. In short, we are unable to tell, for want of a record, whether the quantum of the fee allowed is consistent with the reasonable value of the legal services necessarily rendered on behalf of the victorious litigant.

¶ 21 THE TRIAL COURT'S JUDGMENT ON JURY VERDICT IS AFFIRMED PURSUANT TO THE PARTIES' STIPULATION; THE POSTJUDGMENT COUNSEL–FEE AWARD IS REVERSED AND THE PLEA FOR THAT ANCILLARY RELIEF REMANDED FOR FURTHER PROCEEDINGS TO BE CONSISTENT WITH TODAY'S PRONOUNCEMENT.

¶ 22 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, ALMA WILSON, and WATT, JJ., concur;

¶ 23 SIMMS, J., dissents.

SIMMS, J., dissenting:

¶ 1 Although I agree with the majority's statement of general principle that the amount of a contingent-fee contract may not be used as determinative of the reasonable value of the amount for which an attorney's fee is awarded, I do not think this principle has any application to this case. I do not agree with the Court that 63 O.S.Supp.1992, Section 1–1918(G) creates a "statutory tort" or that this suit was submitted as a claim within the purview of that statute. This was an action in common-law negligence. The Nursing Home Care Act in question, 63 O.S. 1991, §§ 1–1901 et seq. is an administrative scheme placing statutory licensing and regulation enforcement responsibilities to protect

---

**35.** *Burk, supra,* note 28 at 120, at 663; *Oliver's, supra,* note 32 at ¶¶ 8–9, at 295.

**36.** *Burk, supra,* note 28 at ¶ 21, at 663.

**37.** *See* text of counsel-fee award, *supra,* note 4.

patients with the State Department of Health. While Section 1–1918(G) provides for injunctive and preventative relief from violation or threatened violation of the standards set by the Patient's Bill of Rights, it does not a create statutory tort. Neither does it authorize the award of attorney's fees other than in actions for injunctive or preventive relief. Accordingly, I respectfully dissent.