**In the Matter of the ESTATE OF Mariee C. WALLACE.**

**Harold J. WAGES, as personal representative of the Estate of Mariee C. Wallace, deceased, Appellant,**

v.

**Paul E. BLEVINS, Appellee.**

**No. 77525.**

Court of Appeals of Oklahoma, Division No. 2.

June 1, 1993.

---

Robert H. Tips, Tulsa, for appellant.

J. Duke Logan, Donna L. Smith, Logan, Lowry, Johnston, McGeady, Curnette & Logan, Vinita, for appellees.

BRIGHTMIRE, Judge.

This is an ardently contested guardianship proceeding which—prior to the widowed ward's death during the pendency of this appeal—spawned a number of issues featured in briefs supporting a petition in error and four amended ones. The eighty-six-year-old ward's death (between the filing of the second and third amended petitions) provoked a motion to dismiss the appeal on the ground that her death has rendered all issues raised by the appeal moot except as to the appellant's attack on the attorney fees awarded to the appellee's attorney (raised in the appellant's third amended petition).

The appellant attacks several orders and a judgment of the trial court. We, however, find the commission of no reversible error and therefore sustain the orders and affirm the judgment.

## I

The background facts are these. In October 1990, Mariee C. Wallace, a resident of Jay, Oklahoma, engaged Vinita attorney J. Duke Logan to file a conservatorship petition on her behalf. She signed the petition requesting that Margaret Long be appointed conservator. In the petition Ms. Wallace also revoked a "Durable Power of Attorney" she had executed back in August of 1989 which gave various powers to her brother, Joe Calloway, and designated him as conservator/guardian. Notice was sent to Calloway that the petition was set to be heard on November 7, 1990.

Unfortunately Ms. Wallace fell and broke her hip November 6. She was hospitalized in Grove, Oklahoma, and because of her poor general condition and sedation her physician restricted visitation. Nevertheless, the day after the fall, November 7, Mr. Tillison, an attorney who represented Mr. Calloway, visited Ms. Wallace in the hospital and talked to her about discharging Mr. Logan as her attorney. He then submitted to her a paper he had drawn up and just happened to have with him, which dismissed Logan as her attorney. She evidently signed the document though her signature is illegible. Her physician, Dr. Bland, testified that on November 7 Ms. Wallace was under the influence of drugs and was unable to understand or realize what she was doing.

Mr. Tillison had Ms. Wallace sign other letters on November 13 and 27. The latter letter stated that she had hired Tillison to represent her.

On November 13 Tillison entered an appearance in the conservatorship proceeding as attorney for Ms. Wallace's brother, Joe Calloway.

On November 30, lawyer Logan filed an application in the conservatorship proceeding seeking a hearing with respect to his purported dismissal by Ms. Wallace. On that same day Tillison filed a dismissal of the conservatorship which he had Ms. Wallace sign. These matters were set to be heard on January 24, 1991.

Then, on January 22, just two days before the scheduled hearing—without notice to lawyer Logan—Tillison, acting on behalf of his client Calloway, and without consulting Ms. Wallace, cashed several of her certificates of deposit located at three Oklahoma banks and two Arkansas banks totaling some $675,000.[1] Prior to these withdrawals Ms. Wallace's estate consisted of about $800,000 in liquid assets, her home, her car and some unimproved real property.

At the January 24 hearing, Ms. Wallace, who was very hard of hearing, was called as a witness. She testified she had employed attorney Logan because certain people were trying to get her to donate $300,000 for an industrial park. However, her mental condition was such that she could not remember whether she had donated to the park. She was aware that Margaret Long—an employee of the Delaware County Bank and a longtime and trusted friend who had taken care of her affairs for some time—had been paying her bills, writing checks for her, and handling her correspondence. She did not, however, remember signing the conservatorship petition three months earlier requesting that Ms. Long be appointed her conservator; she did not remember where she broke her hip or who her doctor was; she did not know how much real estate she owned or remember selling some of it located near Grove; and she had no idea how much money she had.

Finally, Ms. Wallace testified that she did not want to discharge attorney Logan as her attorney until "this is all over," but then a few minutes later she said she could not recall saying she wanted him to continue representing her. In the same vein, Ms. Wallace said she did not remember Tillison, then said she may have met him for the first time in January 1991, and finally a few minutes later she said she remembered calling him while she was in the hospital in November.[2] She also said she thought she had made some gifts during the three months following her hospitalization but could not remember what they were.

Other testimony indicated that Ms. Wallace was not fully aware of the nature or extent of her property. For instance, she was asked if she recalled that her house at the lake had been put in trust for the First Baptist Church and she responded: "No. Do you think I have?"

Dr. Bland, who had been Ms. Wallace's physician for the past fifteen years, took the stand after listening to her testimony

---

1. Although the certificates were in the name of Ms. Wallace and Calloway as joint owners, the fact is they were purchased with Ms. Wallace's funds without any contribution from Calloway.

2. Tillison testified that a Monte Milliken had called him, not Ms. Wallace.

and stated that she is a victim of what is "commonly referred to as Alzheimer's or Senile Degeneration." He did not know exactly when the disabling disease had begun but his testimony supports the fact it had been quite severe when she fell at home and broke her hip. He further stated that on November 7, 1990, she was in the hospital being treated for the broken hip on his service; and that she would not have been able to communicate to anyone the thought expressed in the dismissal letter she signed on November 7. And while her condition had improved by November 13, she was "still not totally aware of what was going on." The doctor added that her condition made her susceptible to the will of others and an easy target of those who would prevail upon her to dispose of her property.

At the close of the evidence the trial court deferred ruling on the motion to discharge attorney Logan and the motion to dismiss the conservatorship and in effect ordered attorney Logan to continue as counsel for Ms. Wallace.

The next day, January 25, 1991, Logan dismissed the petition for a conservatorship and filed a petition for the appointment of a permanent guardian and the immediate appointment of a temporary or interim guardian for the protection of Ms. Wallace's assets. On the same day the court found that an emergency existed and appointed Richard W. Lock as temporary guardian and issued letters granting him power to take all necessary steps to sequester and preserve the estate of his ward. On January 31, 1991, the court issued an order authorizing the temporary guardian to employ attorney Logan's law firm as his counsel and to begin proceedings to discover and retrieve his ward's assets.

On February 11, 1991, Calloway filed a motion "through his attorneys James E. Tillison, Edward S. Munson, and Robert H. Tips, of counsel for the appointment of Harold J. Wages as guardian." [3] A March 19 hearing on the Calloway motion was attended by all parties. The trial court found the evidence to be clear and convincing that Ms. Wallace was "a partially and physically incapacitated person who is impaired by reason of advancing age and medical condition, resulting in an inability to receive and evaluate information effectively.... and the inability to manage her financial resources;" and that the appointment of a "general guardian over her property is necessary due to her mental incapacity ... to handle her own affairs." The court named Richard Lock general guardian and required him to post a $100,000 bond. The court also appointed Linda Couch as limited guardian of Ms. Wallace's person.

Regarding the foregoing the judge made another significant finding, namely, that the motion of Joe A. Calloway for the appointment of Harold J. Wages as general guardian of Ms. Wallace should be denied because both Calloway and his nominee take the position that the appointment of a guardian is not necessary.

It was from this order—signed and filed April 30, 1991—that Harold J. Wages perfected this appeal on May 9, 1991, and added Ms. Wallace as a party appellant. He lists some twelve "Issues and Errors" in his petition in error which can be reduced to three primary ones: (1) The trial court had no jurisdiction to appoint Lock as guardian because petitioner Logan had earlier been discharged by Ms. Wallace and therefore was not and never had been Ms. Wallace's attorney "in this matter" and consequently had no standing to either file

**3.** On the same day, Wages filed a second motion identical to the first "through his attorney, Robert H. Tips;" an "Entry of Appearance" of Robert H. Tips as counsel for Wages; a purported affidavit of Ms. Wallace nominating Wages to be appointed her guardian and dismissing Logan as her attorney; and a motion for Wages' appointment if the court finds the appointment of a guardian is necessary.

Then, on April 22, 1991, Robert H. Tips filed an entry of appearance on behalf of Ms. Wallace notwithstanding the trial court's order of April 8 appointing attorney Lock as guardian for Ms. Wallace and authorizing him to employ attorney Logan to represent him and the ward.

Finally, on May 6, 1991, attorneys Munson and Tillison withdrew as attorneys for Calloway.

subject guardianship petition or represent the ward; (2) the medical evidence concerning Ms. Wallace's physical and mental condition was inadequate to support the court's finding of the need for a guardian; and (3) the appointment of a guardian for Ms. Wallace was unnecessary and, in any event, appellant Wages should have been appointed guardian because he was nominated by the ward in accordance with the requirements of 30 O.S.1991 § 3–102.

Attorney Logan made an appearance in the appeal on behalf of appellee Lock and received permission to file a response on May 23, 1991.

On May 30, 1991, Wages filed the first amended petition in error to comply with Civil Appellate Procedure Rule 1.63, 12 O.S.1991 ch. 15, app. 2, by adding exhibit "D" expressing a disinterest in an accelerated disposition of the appeal.

A second amended petition in error was filed July 1, 1991, complaining of an order rendered at a hearing held on June 6, 1991, which awarded an attorney's fee to attorney Logan for services rendered and advances made in both the conservatorship and guardianship proceedings to that date.

A third amended petition in error was filed August 30, 1991, for the purpose of complaining of an order issued at a hearing held on August 15, 1991, to settle a memorialization of the June 6, 1991, hearing. On August 15 the court found that attorney Robert Tips' attempt to represent both Ms. Wallace and his client, Harold Wages, "presents an apparent conflict of interest, which might prevent Mr. Tips from being independent" because of Mr. Wages' opposition to the appointment of a guardian for Ms. Wallace. The court proceeded to appoint Randall Elliott of Pryor, Oklahoma, to represent Ms. Wallace.

On December 19, 1991, appellant Wages filed a motion to substitute the party appellee. The allegation was that guardian Richard Lock died October 27, 1991, and on November 19 Paul Blevins was appointed successor guardian. The supreme court ordered the substitution February 12, 1992.

On September 29, 1992, attorney Logan filed a motion to dismiss the appeal as moot as to all issues except the one pertaining to his attorney's fee because Ms. Wallace had died on August 18, 1992.

On October 20, 1992, attorney Tips filed: (1) A statement confirming the death of Ms. Wallace on August 18, 1992; and (2) a motion to substitute the party appellant because appellant Wages had filed a petition to probate the last will of Ms. Wallace and was "appointed Personal Representative on October 9, 1992."[4] The motion requests that Harold J. Wages be substituted as party appellant for Mariee C. Wallace as personal representative of her estate and that this appeal continue in full force and effect as to all issues; and (3) a response objecting to the guardian's motion to dismiss.

The record, incidentally, fails to show that Ms. Wallace's court-appointed attorney, Mr. Elliott, ever entered an appearance in this appeal. It does show, however, that a fourth amended petition in error was filed November 9, 1992, by Mr. Tips for the stated purpose of attacking an order issued October 7, 1992, granting an additional attorney's fee to attorney Logan. Then, on November 23, 1992, appellee Blevins filed a request for leave to file a response to the appellant's fourth amended petition with response attached.

## II

Preliminarily, we make these rulings on various interim motions the disposition of which has been deferred until the appeal could be considered on its merits: (1) The filing of appellee Blevins' response is hereby approved; (2) the appellee's motion to dismiss is denied; and (3) appellant Wages' motion to substitute himself as the duly-appointed personal representative of the late Mariee C. Wallace's estate is granted and Harold J. Wages, as personal represen-

---

**4.** The motion recites that copies of the death certificate, the petition for probate of the will, and Wages' appointment as personal representa-

tive of the deceased are attached to the motion as exhibits "A", "B" and "C", but they are not so attached.

tative of the estate of Mariee C. Wallace, deceased, is substituted for appellant Mariee C. Wallace.

### III

■ Appellant Wages' first assignment of error is that neither petitioner for the appointment of a guardian for Ms. Wallace—J. Duke Logan or Richard Lock—had standing to file such a petition because they were not persons interested in the welfare of Mariee C. Wallace.

The argument is that the only interest of Messrs. Logan and Lock "is and was in filing lawsuits and obtaining money and thus fees." Wages goes on to say the lawyers had no interest in Ms. Wallace's welfare because after she hired attorney Logan to petition for a conservatorship she discharged him and dismissed the conservatorship proceeding.

The unwarranted accusations are not only not supported by any evidence in the record, but on the contrary, the evidence inferentially, if not directly, discloses proper professional attention to Ms. Wallace's wishes, needs and interests. In this regard the appellant admits that Ms. Wallace hired attorney Logan in the fall of 1990 for the purpose of establishing a legal means of helping her manage her affairs and preserve her assets. The clear weight of the evidence is it was decided that a conservatorship under the auspices of her longtime friend and confidante, Margaret Long, would afford sufficient protection. Evidently unforeseen, however, was the intervention of a lawyer hired by Joe Calloway, Ms. Wallace's brother, a longtime resident of New York, who opposed the kind of legal protection being sought for Ms. Wallace. The intervening lawyer prepared a dismissal of the conservatorship sought by Ms. Wallace's lawyer and went to the hospital where he says he obtained the illegible signature of the elderly woman who had been sedated to lessen the pain of her hip which had been broken in a fall at home the previous day.

After having heard evidence on January 24 and March 19, 1991, both direct and circumstantial, lay and expert, the trial judge was evidently convinced that the widow had been imposed upon on November 7, 1990, and did not have the mental capacity to be fully aware of the nature and consequence of what she was being asked to sign. And this evidence along with Ms. Wallace's faltering testimony the following January—testimony punctuated with frequent errors and critical memory lapses—prompted the trial judge to reject Mr. Calloway's motion to dismiss the conservatorship and attorney Logan's request to withdraw as Ms. Wallace's lawyer which, of course, gave both guardian Lock and attorney Logan standing to petition the court for relief on behalf of Ms. Wallace.

In this the court did not err.

### IV

The appellant's second complaint is that the court reversibly erred in failing to advise Ms. Wallace of her right to counsel pursuant to the provisions of 30 O.S.1991 § 3–107(B).

The short answer to this is that the record shows otherwise. Although the appellant's proposition as well as his argument are vague, we will assume he is talking about the April 8, 1991, order resulting from the March 19, 1991, hearing which formed the foundation for the first petition in error filed by the appellant in the instant appeal. The matter heard on that date was a petition for the appointment of a guardian for Ms. Wallace filed on her behalf by her attorney, Duke Logan. The order memorializing the proceedings reveals that Ms. Wallace's attorney, Duke Logan, appeared "in person." [5]

---

5. In this regard the record discloses that the document attorney Tillison prevailed upon the ailing Mariee Wallace to sign on November 7, 1990, purporting to discharge attorney Logan as her attorney, was, on January 24, 1991, in effect found by the judge to be a nullity, and the court ordered attorney Logan to continue representing Ms. Wallace. He did so and, as mentioned earlier, he dismissed the conservatorship proceeding on behalf of Ms. Wallace and petitioned for the appointment of Mr. Lock as her guardian.

This contention is therefore without merit.

## V

■ The appellant's third complaint is failure of the court to appoint Harold J. Wages as guardian of Ms. Wallace because she had nominated him and 30 O.S.1991 §§ 3–102 and 3–104 require the court to honor such nomination.

We agree that § 3–102(A) authorizes "[e]very person eighteen (18) years of age or older, *who is of sound mind and not acting under duress, menace, fraud or undue influence*" the right to "nominate a guardian of his person and property, or of either...." (Emphasis added.)

As our earlier review of the evidence discloses, the November 7, 1990, nomination relied upon by appellant Wages clearly sustains the trial judge's implied finding that the nomination was obtained by attorney Tillison at a time when Ms. Wallace was not of sound mind.

Under these circumstances the court did not err in rejecting the purported nomination of Mr. Wages.

## VI

■ The fourth error said to have been committed by the trial court was the appointment of a guardian for Ms. Wallace. The appellant contends that there is no clear and convincing evidence that she was an incapacitated or partially incapacitated person on January 24, 1991.[6]

This contention is also without merit. The performance of Ms. Wallace while on the witness stand January 24, 1991—part of which we described earlier—when coupled with other evidence, both lay and expert, fully justified the trial court in assessing the evidence as clearly and convincingly manifesting that she was incapacitated to the extent of needing a general guardian of her estate and a limited guardian of her

6. The "clear and convincing" standard of proof is required by 30 O.S.1991 § 3–111.

person as authorized by 30 O.S.1991 § 3–112.

## VII

■ The appellant's fifth assignment of error is set up in the second amendment of his petition in error filed July 1, 1991, attacking an order issued June 6, 1991—an attorney's fee award to attorney Logan—on the ground the court ignored state law and awarded an excessive amount.[7]

The argument is that "there is no question" about the fact that attorney Logan is entitled to an award of an attorney's fee for the services he rendered between October 1990, the date Ms. Wallace hired him, and November 7, 1990, the date attorney Tillison procured her signature on the purported dismissal of attorney Logan, but he is not entitled to a fee for services rendered after that date. Moreover, says the appellant, no proper hearing was held to determine a reasonable fee and this, together with the award of an improper expense reimbursement, means that the award is excessive for the services rendered both before and after November 7, 1990.

The contention is rejected for two reasons. First, we have already determined that the purported dismissal of attorney Logan dated November 7, 1990, was properly held by the trial court to be invalid and that attorney Logan was properly directed by the court to continue representing the interests of Ms. Wallace after that date.

Secondly, the order issued June 6, 1991, recites that the court did hear evidence in accordance with the guidelines promulgated in *Burk v. City of Oklahoma City*, 598 P.2d 659 (Okl.1979).

For these reasons we decline to disturb the attorney's fee award.

## VIII

■ Next we consider the issue raised in the appellant's third amendment to the petition in error and argued in their first

7. The memorialization of the June 6 order is not attached to the second amendment of the petition in error but is attached to the third amendment of such petition.

supplemental brief, *viz.*, that the trial court reversibly erred in the June 6 order in finding that attorney Tips, counsel for appellant Wages, should be removed from representing Ms. Wallace because of a conflict of interest, and in appointing independent counsel to represent her.

At the foundation of this issue is a finding by the trial court that there existed a conflict of interests between Ms. Wallace and her brother, Joe Calloway, arising out of the latter's alleged conversion of over $650,000 belonging to the ward which he refuses to return to the ward's estate. The trial court was concerned about Mr. Tips' ability to provide the ward with independent representation in view of the fact that he was hired to represent Mr. Wages, an ally of Mr. Calloway. Moreover, both Wages and Calloway maintain that Ms. Wallace was mentally sound and did not need a guardian.

We hold the trial court did not abuse its discretion in excusing Mr. Tips from the representation of the ward.

### IX

Finally, in support of issues raised in a fourth amendment of his petition in error, the appellant argues two more propositions in a second supplemental brief, namely: The court erred in (1) failing to appoint nominee Wages as successor guardian; and (2) authorizing the successor guardian to institute legal proceedings to recover the funds converted by Joe A. Calloway.[8]

The first contention was advanced in the original petition in error and was decided against the appellant in Part V of this opinion.

The second issue is so patently without merit that it is unnecessary to discuss it further.

8. The fourth amended petition in error, filed November 9, 1992, complains of an attorney fee purportedly awarded to Mr. Logan on October 7, 1992. The appellant did not file an amended designation of record to include the order in the appellate record. *See* Civil Appellate Procedure Rule 1.24, 12 O.S.1991 ch. 15, app. 2. The copy of the order attached to the petition in error recites that the matter was heard June 29, 1992, and bears two file stamps, July 14 and October

### X

The orders appealed are sustained; the judgment is affirmed.

REIF, V.C.J., and RAPP, P.J., concur.

7, 1992. Giving the appellant the benefit of the doubt by using the latter date, the time to appeal the order expired November 6, 1992, and therefore the petition is untimely. In any event, in his second supplemental brief the appellant abandoned his complaint of the fee award and instead advanced one argument previously raised and another raised for the first time on appeal.