2007 OK CIV APP 8

**COMMERCIAL FINANCIAL SERVICES, INC., Plaintiff/Appellant,**

v.

**J.P. MORGAN SECURITIES, INC., f/k/a Chase Securities, Defendant/Appellee,**

and

**Mayer Brown Rowe & Maw, P.A., f/k/a Mayer Brown & Platt, Defendant.**

**No. 103053.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 28, 2006.

Certiorari Denied Jan. 16, 2007.

John E. Dowdell, Christine D. Little, Steven M. Ruby, Norman, Wohlgemuth, Chandler & Dowdell, Tulsa, OK, for Plaintiff/Appellant.

Frederic Dorwart, J. Michael Medina, Frederic Dorwart Lawyers, Tulsa, OK, and Thomas C. Rice, Joseph F. Wayland, Simpson, Thacher & Bartlett, L.L.P., New York, NY, for Defendant/Appellee.

KENNETH L. BUETTNER, Chief Judge.

¶ 1 Commercial Financial Services, Inc. (CFS), Plaintiff/Appellant, sued its investment banker J.P. Morgan Securities, Inc., then known as "Chase Securities, Inc.," May 29, 2002 for professional negligence and breach of fiduciary duties.[1] CFS was in the business of buying and collecting consumer debt receivables "charged off" by their origi-nal holders. It is undisputed that CFS's once profitable business plunged into an abyss from which it could not extricate itself. Chase Securities filed a motion for summary judgment and claimed that CFS hid from it, as well as the investors, CFS's knowledge that its business model was failing long enough to bilk the investors, creditors and bankers of more than $1.5 billion. The trial court granted the motion for summary judgment. We affirm. CFS requests a measure of damages called "deepening insolvency" which is not recognized in Oklahoma.

¶ 2 CFS's financial expert valued, as of December 31, 1996, the excess of CFS's liabilities over its assets at approximately $187 million. As of May 31, 1997, CFS's financial expert stated that the excess of liabilities over assets was approximately $286 million. CFS concedes that it was insolvent at least by September 1998, when it began sham assets sales to Dimat, an entity formed by Jay Jones, a co-founder, officer and director of CFS.[2] CFS filed for bankruptcy protection December 11, 1998 when its liabilities exceeded its assets by $1.5 billion. CFS hired Chase in late 1996.

¶ 3 Even though CFS was already insolvent, it claimed that by heeding Chase's advice, it became more insolvent, and that Chase was responsible for that by prolonging the insolvency—"deepening insolvency."[3]

¶ 4 In its Motion for Summary Judgment, Chase claimed that CFS did not suffer any damages because in seeking $1.3 billion in damages for deepening insolvency, "CFS asks this Court to go where no Oklahoma court has gone before." CFS admits that no Oklahoma court has squarely addressed the question of "deepening insolvency" as a measure of damages, however it contends that in *Stroud v. Arthur Andersen & Co.*,

---

1. Defendant Mayer Brown Rowe & Maw, LLP was dismissed with prejudice October 18, 2005.

2. Jay L. Jones, an almost 20% shareholder in CFS, pled guilty to wire fraud, mail fraud, bank fraud, and money laundering and received a five year term in the federal system. William Bartmann, the majority shareholder, was tried and acquitted, although Jones' statement and other depositions' testimony implicated him in the sham corporation.

3. Chase's Motion for Summary Judgment was based on five grounds: (1) CFS's suit is barred by the doctrine of *in pari delicto*; (2) CFS's Material Breach of Contract precludes its claims; (3) CFS's Fiduciary Duty Claim fails in any event; (4) CFS's negligence claims are barred by contract; and (5) CFS has not suffered any damages. Because we hold that CFS has not suffered any legally cognizable damages, we decline to address the first four grounds.

2001 OK 76, 37 P.3d 783, the Oklahoma Supreme Court approved a similar calculation of damages as is used in deepening insolvency. "Deepening insolvency," an amorphous concept found especially in bankruptcy literature, deserves some explanation.

¶ 5 Although presented in the case at bar as a damages question, deepening insolvency, the fraudulent prolongation of an insolvent corporation's life, is used in some jurisdictions as a cause of action. In *In re Del–Met Corp.*, 322 B.R. 781 (Bankr.M.D.Tenn.2005), the trustee of corporate debtors' Chapter 7 bankruptcy estate brought an action against the debtors' director, the related corporate entity, the customers who had allegedly taken control over the business, and the debtors' law firm. The Bankruptcy Court stated that "[t]he distinction between "deepening insolvency" as a tort or damage theory may be one unnecessary to make. Prolonging an insolvent corporation's life, without more, will not result in liability under either approach. Instead, one seeking to recover for "deepening insolvency" must show that the defendant prolonged the company's life in breach of a separate duty, or committed an actionable tort that contributed to the continued operation of a corporation and its increased debt." *Id.* at 813. In *Del–Met*, the Bankruptcy Court was required to determine whether Tennessee would recognize the tort of "deepening insolvency." It determined ". . . that if presented with compelling facts, the Tennessee Supreme Court would recognize deepening insolvency as an actionable breach of duty to a corporation." *Id.* at 815. However, as stated, the present case concerns "deepening insolvency" as a measure of damages, not a cause of action.

¶ 6 Damages incurred from deepening insolvency are to the corporation, not the shareholders, who, it is conceded, may truly suffer injury from diminished solvency. Sabin Willett states in his article "The Shallows of Deepening Insolvency," 60 Bus. Law. 549, 2005, at p. 561, because the insolvency already existed at the time of the delict, "[d]eepening the firm's insolvency did not add insult to injury, it added insult to death." The question for the court in the instant case is whether a corporation, under Oklahoma law, may recover damages for deepening insolvency.

¶ 7 In *In re CitX Corporation, Inc.*, 448 F.3d 672 (3d Cir.2006), a Chapter 7 trustee sued a bankruptcy debtor/internet's company's accounting firm and its partner who were responsible for compiling the debtor's financial records alleging, among other things, professional negligence and deepening insolvency. The Third Circuit Court of Appeals held that under Pennsylvania law, ". . . the deepening of a firm's insolvency is not an independent form of corporate damage." *Id.* at 678. The Court noted that "[w]here an independent cause of action gives a firm a remedy for the increase in its liabilities, the decrease in fair asset value, or its lost profits, then the firm may recover, without reference to the incidental impact upon the solvency calculation." *Id.* However, CFS contends that *Stroud v. Arthur Andersen & Co.*, 2001 OK 76, 37 P.3d 783, leads to a different conclusion.

¶ 8 In *Stroud*, two companies (SCI and ICOPS) clients of the accounting firm, Arthur Andersen, sued the firm for negligent performance of financial audits. The jury was required to assess the degree of care Arthur Andersen was supposed to use over a five-year period. With respect to damages, plaintiffs' expert testified to an approximate range of damages reached by valuing the two companies at different times and under different circumstances. The Oklahoma Supreme Court noted that Oklahoma's jurisprudence is clear that when the evidence shows that plaintiff has suffered injury and some loss, then the jury is the proper vehicle for determining what the loss is.

¶ 9 CFS wants this Court to extend the factual scenario in *Stroud*, that is, that the expert made approximations of damages from comparing relative values of the companies, into a new law of damages, "deepening insolvency." Nothing in *Stroud* indicates that the relative values used by the expert demonstrated the companies were insolvent at the time of injury, as opposed to becoming more insolvent. Moreover, the Court noted, "the parties do not question that [the plaintiffs] were in fact injured." *Stroud*, 2001 OK 76, ¶ 26, 37 P.3d at 791.

¶ 10 Recoverable damages are set by the legislature. See Oklahoma Statutes, Title 23, "Damages." For the causes of action pled by CFS, professional negligence and breach of fiduciary duties, damages are limited by *23 O.S.2001 § 61*, "Obligation not arising from contract," which is the codification of our common law.[4] CFS may seek damages proximately caused by Chase's negligence or breach of fiduciary duties. That is all our legislature has allowed.

¶ 11 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*." *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Summary judgment was properly granted as a matter of law. Factually, CFS was insolvent. "Deeper insolvency" is not a recognized measure of damages in Oklahoma. CFS has failed to allege that Chase was the proximate cause of compensable injury.

¶ 12 Summary Judgment granted in favor of J.P. Morgan Securities, Inc., f/k/a Chase Securities, Inc. is AFFIRMED.

¶ 13 CFS also appeals the trial court's award of $1,382,325 in attorney fees and $53,958 in costs, ordered April 5, 2006. The parties were granted permission to brief the attorney fee question on appeal pursuant to Supreme Court Rule 1.36(g), this court having noted that the principle issue, whether a defendant may recover attorney fees pursuant to *12 O.S.2001 § 1101.1*, "Civil actions—Offers of judgment—Counteroffers—Recovery of costs and attorney fees," is presently pending before the Oklahoma Supreme Court on a petition for certiorari.

¶ 14 Chase filed its Application February 10, 2006 pursuant to *12 O.S.2001 § 1101.1* (B) for attorney fees and litigation costs it incurred from April 21, 2005, the date of its offer of judgment to CFS until January 11, 2006, the date the court granted summary judgment in its favor. Chase claimed that it incurred fees in the total amount of $2,333,055, and costs in the amount of $53,958, but only asked for fees in the amount of $1,382,325 because of the customary amount of billing in the Tulsa legal community. As a legal basis, Chase cited *12 O.S.2001 § 1101.1* (B)(3):

> If no offer of judgment or counteroffer of judgment is accepted and the judgment awarded the plaintiff is less than one or more offers of judgment, the defendant shall be entitled to reasonable litigation costs and reasonable attorney fees incurred by the defendant with respect to the action or the claim or claims included in the offer of judgment from and after the date of the first offer of judgment which is greater than the judgment until the date of the judgment. . . .

¶ 15 Chase also asserted that its claims for fees and costs were reasonable and in line with the Tulsa community, not with its home base, New York. It noted that the court could add to the attorney fees based on the Oklahoma *Burk* factors,[5] and despite its position that the court could enhance the fee pursuant to the *Burk* factors, Chase did not seek enhancement. Chase appended detailed exhibits, including time records. The first set was sponsored by the affidavit of Thomas C. Rice, Esq. (Exhibits A–P), and the second set was sponsored by the affidavit of Frederic Dorwart, Esq. (Exhibits A–E).

¶ 16 On February 27, 2006, CFS filed an unopposed Motion for Extension of Deadline for Response to Motion for Attorney Fees and Costs. The trial court granted the motion February 28, 2006 and ordered the response deadline extended to March 20, 2006.

---

**4.** *23 O.S.2001 § 63:* For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused

thereby, whether it could have been anticipated or not.

**5.** *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659.

¶ 17 On March 20, 2006, CFS filed a Motion to Stay Consideration of Chase's Motion for Attorney Fees and Costs based the fact that the Oklahoma Supreme Court had granted a petition for certiorari September 19, 2005 in *Boston Avenue Management, Inc. v. Associated Resources, Inc.*, Case No. 100,-009.[6] *Boston Avenue* held that a defense "judgment" pursuant to a summary judgment was equivalent to a defense verdict with respect to *12 O.S.2001 § 1101.1.*

¶ 18 CFS did not file a response to Chase's Motion for Attorney Fees and Costs.

¶ 19 Chase responded to CFS's Motion to Stay April 4, 2006, objecting, among other grounds, that it was entitled to attorney fees and costs, and that CFS had requested an extension of time to respond to Chase's Motion for Attorney Fees and Costs, but had not responded. Chase requested the trial court to enter its order based on the record before it.

¶ 20 The trial court awarded attorney fees in the amount of $1, 382,325 and costs of $53,958, based on the records submitted by Chase, April 5, 2006. CFS did not file any post-order motions objecting to the awards.

¶ 21 On appeal, CFS contends that Chase did not establish entitlement to attorney fees and costs because *12 O.S.2001 § 1101.1* (B) does not apply in the absence of a "judgment awarded the plaintiff." In CFS's Motion for Stay, it relied on the dissent in *Boston Avenue Management, Inc. v. Associated Resources, Inc.*, No. 100,009, filed April 22, 2005. We, however, maintain the logic of the majority's holding, that is, "... [t]he purpose of offers to confess statutes is to cause the parties to realistically evaluate their cases; to provide a benefit to those who evaluate accurately, and a detriment to those who do not. The statute would produce an absurd result if a defendant offers to confess judgment in the amount of $3500 (which is rejected), and would receive the benefit if it loses the case with a $1 judgment, but lose the benefit if it wins the case." *Opin.* at ¶ 10. The opinion continued, at ¶ 11, "We see no reason to distinguish between a defense verdict and a successful defense motion for summary judgment. The same would be true if a plaintiff successfully obtained summary judgment after making a counteroffer of judgment under *12 O.S. 1101.1* (A)(2)." We hold that the trial court did not err in awarding attorney fees and costs to Chase pursuant to *12 O.S.2001 § 1101.1* (B)(3).

¶ 22 All of the rest of CFS's complaints are the result of its own trial strategy. It alleges it was denied an attorney fee hearing; that the trial court failed to make detailed findings; that the trial court failed to determine reasonableness in general; that it was not allowed to file a response to the Motion for Attorney Fees; that the amount of fees sought by Chase are unreasonable; and further minutiae better brought to the trial court's attention when CFS had its opportunity. It has certainly waived them on appeal and we decline to address them for that reason. CFS chose not to respond to Chase's Motion for Attorney Fees and Costs, even after requesting and being granted an extension of time within which to respond. It has preserved no issue for appeal with respect to these grounds. *Hamid v. Sew Original,* 1982 OK 46, 645 P.2d 496. Further, any error was "invited error," and not reversible. See *Cavett v. Peterson,* 1984 OK 59, ¶ 22, 688 P.2d 52, 59 ("Another error is alleged by virtue of the fact that no pre-trial conference was held in this matter. The conference was cancelled because the attorney now alleging that fact to be error stated he had not sufficient time to prepare therefor and thus error, if any there be, was invited.").

¶ 23 The order awarding costs and attorney fees in favor of Defendant/Appellee J.P. Morgan Securities, Inc., f/k/a Chase Securities, Inc. is AFFIRMED.

ADAMS, J., and MITCHELL, P.J., concur.

---

6. That case is still pending certiorari.