2012 OK CIV APP 99

**William A. Belle ISLE and James P. Brady, Petitioners,**

v.

**Michael A. BRADY a/k/a Mike Brady, Trustee of the Living Trust of Bonner Brady and Marguerite Brady, Respondent/Appellant,**

and

**P. Gae Widdows, Interim Successor Trustee, Appellee.**

**No. 109,394.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 4, 2012.

Michael James King, M. Jean Holmes, S. Gregory Pittman, Winters & King, Inc., Tulsa, Oklahoma, for Respondent/Appellant.

P. Gae Widdows, Mark T. Hamby, Katherine R. Morelli, Bonham & Howard, PLLC, Tulsa, Oklahoma, for Appellee.

JANE P. WISEMAN, Judge.

¶ 1 Michael A. Brady appeals from an order of the trial court awarding the interim successor trustee of the Living Trust of Bonner and Marguerite Brady (Trust) interim fees and costs. The issue on appeal is whether the trial court's decision awarding fees and costs to the interim successor trustee, who was appointed by the trial court, was contrary to the clear weight of the evidence or contrary to law. We hold that Michael Brady failed to show that the award of fees and costs was not supported by the evidence or was contrary to law, and we affirm the trial court's decision.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 William A. Belle Isle, James P. Brady (collectively, Petitioners) and Bonnie Brady [1] are three of the four named beneficiaries of the Trust. Michael Brady (Mike) is the successor trustee of the Trust and the fourth beneficiary. On October 8, 2009, Petitioners filed a motion for accounting and partial distribution of trust assets and a memorandum of law in support of their motion. Petitioners stated that they are three of the four children of the Trustors of the Trust, Bonner and Marguerite Brady, and Mike is the fourth child. Petitioners claim they are entitled to a combined 70 percent share of the entire Trust estate and that Mike is entitled to 30 percent.

¶ 3 In their motion, Petitioners state that the Trust requires Mike as trustee (1) to provide them with a comprehensive accounting of all trust assets and the income and expenses connected with the Trust's real property, (2) to include in the accounting a report on the condition and insurance coverage of all real property, (3) to allow Petitioners or professionals designated by them to examine the Trust's rental properties, (4) to promptly distribute certain named assets, and (5) not to sell, liquidate, transfer, or encumber the remaining Trust assets.

¶ 4 They assert Mike failed to provide an accounting after the deaths of Bonner and Marguerite Brady, ignored James' written request for an accounting, ignored the Trust provisions requiring distribution of certain assets, and wasted and damaged Trust assets. According to Petitioners, the Trust's rental properties have been neglected to the point that insurers have revoked policies covering two of the three rental properties, and squatters lived in one of the properties for more than a year without paying rent. They claim Mike has engaged in a pattern of self-dealing conduct and has misappropriated Trust assets and that Mike's actions have caused more than $120,000 damage to the Trust estate.

¶ 5 Petitioners also filed an application for a restraining order and to compel an accounting, make partial distribution, remove Mike as trustee, and award damages. They allege Mike breached his fiduciary duties when he failed to render an accounting of trust assets, losses, and expenses, and neglected and caused the waste of Trust properties. Petitioners assert that all of the Trust's rental properties have been vacant for at least 48 months and that the only rental income during the 68 months of Mike's control came from a tenant whose tenancy began before Mike assumed control of the Trust. Petitioners claim that Mike neglected the rental properties causing considerable loss to the Trust and that Mike's self-dealing and misappropriation of Trust property caused additional loss to the Trust. They contend that Mike breached his fiduciary duty by failing to provide support for Bonnie Brady, who has special needs due to her medical condition, and by failing to make distributions to beneficiaries as the Trust requires.

¶ 6 Petitioners sought a temporary restraining order and a preliminary injunction commanding Mike as trustee to act as directed by the Trust. They also sought to remove Mike as the trustee, appoint William as a successor trustee, hold Mike personally liable for the losses and harm suffered by the Trust, and require Mike to pay damages, attorney fees and costs.

¶ 7 The trial court issued an order directing Mike to provide Petitioners with an ac-

---

1. Although initially a petitioner in this action, Bonnie Brady later withdrew.

counting of all the Trust's real and personal property, including the Trustors' personal property, and to allow Petitioners, or a professional designated by them, to enter and examine the rental properties. The court additionally ordered Mike not to sell, liquidate, transfer, or encumber any Trust assets without further order of the court and issued a temporary restraining order to that effect.

¶ 8 Petitioners continued to seek Mike's removal as trustee and his replacement by William as successor trustee. Mike opposed their request. At a hearing held on December 23, 2009, the trial court on its own motion appointed Gae Widdows, an attorney, as an interim successor trustee to serve until the court could make a decision on the merits of Petitioners' claims. The court stated that Widdows' task is to "collect, preserve, maintain and create an accounting that James has alleged is missing" and to "collect, preserve, appraise, determine the status of what the Trust contains of the real property, or otherwise, and to provide an accounting to the Court and, certainly, copies to the parties." The court later stated that Widdows' duties were to be the same as a normal successor trustee, meaning she should "collect, [pre-]serve, value, repair property, and, to quite honestly, determine whether or not in her view a corpus of the estate has been handled in a fashion that's consistent with the way she's doing it." The court noted that it was not saying that Mike had done anything wrong. The court relieved Mike of the duty to make an accounting.

¶ 9 In the court's January 11, 2010, order reciting its decision on the interim successor trustee, the court noted that it was neither removing Mike as trustee nor prejudging the issue of whether he should be removed. The court granted Widdows the same powers as those vested in the trustee by virtue of the terms of the Trust and Oklahoma law. The court directed Widdows to "collect, preserve, value, and if needed repair the Trust's assets" and to prepare an accounting. The court directed Mike within 48 hours to deliver to Widdows possession of and keys to the Trust's real property, possession of the storage unit and safe deposit box containing Trust property, and "photocopies of such

documents regarding the Trust's affairs as are in [Mike's] possession, custody, or control." The court also ordered Petitioners to provide Widdows information in their possession, custody, and control regarding Trust affairs. The court provided that "Widdows' fees as trustee shall be paid from the Trust upon application and approval by the Court, with notice to the parties to this action."

¶ 10 Widdows accepted her appointment on January 14, 2010, and began her work as interim successor trustee. On April 15, 2010, she filed an application for an award of interim fees and costs seeking $71,582 in attorney fees and $1,162.25 in costs. In her affidavit attached to the application, Widdows states that her standard hourly rate is $210 per hour but she reduced her hourly rate to $200 per hour for this case. She listed the rate for B. Gail Brown, an attorney who assisted Widdows in performing work for the Trust, at $60 per hour and states that a paralegal who worked on the case was also billed at $60 per hour.

¶ 11 Mike filed a response requesting the trial court to (1) deny Widdows' application "with respect to any fees attributable to preparation of estate tax returns" which amounted to approximately $1,400, (2) reduce or deny items that are block billed, and (3) reduce or deny the requested fees for services performed by Widdows' paralegal. Petitioners, on the other hand, endorsed the application and stated that "Widdows and her associates have been diligent and effective in performing the duties assigned to them by [the] Court." Petitioners asserted, however, "that the failure of the former Trustee, Mike Brady, to cooperate with the Successor Trustee has resulted in substantial otherwise avoidable cost to the Trust." Petitioners took the position that Mike should be personally surcharged with more than half of Widdows' fees and costs.

¶ 12 In its order, the trial court noted that Mike withdrew his objection to the fees attributable to the tax review and the estate tax returns. The court sustained in part Mike's objection to the charges made by B. Gail Brown that were block billed and reduced those charges by the amount of $2,280. The court awarded Widdows interim fees in

the amount of $69,302 and costs in the amount of $1,162.25.

¶ 13 Widdows filed a second application for interim fees and costs on December 15, 2010, in which she sought $98,016 for attorney fees and $820.45 for costs. Mike filed a response and objection to the application, claiming that Widdows exceeded the scope of her appointment when she expressed opinions about Mike's handling of the Trust, spent too much time pursuing certain property alleged to be included in the Trust, billed repeatedly for the same task, paid an attorney to balance checkbooks and pay bills, and used her brother to perform property management functions.

¶ 14 A hearing was held on Widdows' second application for fees on March 9 and 10, 2011. The court noted Petitioners had no objection to the request for fees. Counsel for Mike noted that "there are certain items in the application that we would have no objection to." He continued, "Most of the items in the application we would not interpose an objection to in terms of whether or not the interim successor trustee should be paid, but we would object to those items being paid by the trust itself." When the court asked who should pay for those items, Mike's counsel responded, "Whoever asked for them to be done, Your Honor."

¶ 15 Widdows testified at the hearing and answered questions regarding her application. In regard to the amount of time spent pursuing property thought to be Trust assets, Widdows stated:

> Part of the problem with this is that I have four beneficiaries all of whom want me to marshal assets that I don't know where they are, what they are, and what the description is. And so I have to look at tax returns. I have to try to obtain information from Michael and sometimes his explanations are different from the other siblings. And so, you know, I tried to balance the amount of time that I spent on a[n] item answering a question or making a determination for each of the beneficiaries involved in this trust.

**2.** In her appellate brief, Widdows states there

Another objection raised is that I have spent $280 on a small estate affidavit. And I have spent $280. Doerner Saunders has billed $585 for the same work and it still isn't completed today because the accountant will not provide me with the documentation necessary to attach to the affidavit. So that's a whole other issue and problem in this trust.

Regarding the $2,800 billed for what Mike describes as "balanc[ing] checkbooks," Widdows stated there are 11 accounts [2] involved in the Trust but she did not bill for "sitting down and writing checks" for monthly bills like utilities but only for balancing the checking account.

¶ 16 According to Widdows, the most time-consuming issues in the Trust concerned the three rental properties. She engaged her brother, an industrial engineer with an MBA, to work on the properties at $60 per hour, rather than doing it herself at a higher rate.

¶ 17 Widdows testified that after she spent $9,000 on one of the rental properties, the condominium, it has been rented for a year. Although it had not been rented for the majority of time that Mike was the trustee, the condominium was in the best shape of the three properties because it had not been vandalized. There were, however, a lot of repairs to be made because it had been vacant for many years. Widdows introduced pictures of the three properties both when they were turned over to her and after repairs had been made while she was acting as interim successor trustee. The pictures showed that one property, the 49th Street Property, had graffiti on the walls and cabinets, broken fixtures, and damage to the ceilings. The "after" pictures indicate that the property was cleaned up, painted, and had new appliances and fixtures. This property was listed at the time of hearing for sale for approximately $125,000. The third property, the 126th East Avenue property, had been vandalized and copper had been stolen from the air conditioning unit. The property was "sold as is" sometime in May 2010. The property was not leased for most of the time Mike was trustee.

were 12 such accounts.

¶ 18 Widdows testified that the majority of her "work was recreating the books because there was [*sic*] no books or records for this trust." Although the trial court ordered Mike to turn over within 48 hours of its order possession of the keys to trust property, keys to any storage units and safety deposit boxes, and any photocopies of documents regarding Trust affairs, Mike did not deliver these items as ordered. When Mike did turn over documents on later occasions, he did not provide an accounting that Widdows could use as a starting point to create a new accounting, and she had to begin the accounting with source data. She met with the beneficiaries to get an idea of the assets in the Trust and discovered some assets by finding information while going through records in storage. Some results of her investigations required more detailed research, such as her discovery that someone other than Mike had signed checks on a Trust account. She was also required to track down why a $35,000 transfer had been made from a Trust account to Mike's personal account.[3] She was required to do research on a boat and car that were thought to be part of the Trust's assets.

¶ 19 The court agreed that an enormous amount of money had been spent on legal fees and that "the amount of legal services based upon the amount of money that's involved in this case is not proportionate." The court stated:

> However, the Court doesn't have control over that nor do the lawyers have control over that. The only persons who have control over that are the litigants. And if they want to continue to spend money on issues such as the one we're trying today or other issues, that's fine with me. I can't stop them. And not only does that occur, I might add, in this case, it occurs in many cases where, quite frankly, the litigants spend every single dime of trust or probate estate fighting one another because that's what they choose to do. The Court has no control over that.

¶ 20 Mike called Mark Loeber to testify as an expert witness on the issue of the reasonableness of Widdows' fees. Loeber has worked in his current employment for 17 years in the area of estate planning. He served on the trust committee and the executive committee of a local bank. Widdows objected to Loeber being allowed to testify as an expert witness, asserting that, although Loeber may be an expert on estate planning, charitable giving, and other areas, he is not an expert on court-appointed trustees. The trial court sustained Widdows' objection. The trial court found that the bank's trust department fee schedule was not actually set by Loeber but by the trust committee based on the senior trust officer's research and recommendations. The court stated it would allow Loeber as a fact witness to testify to his experience with fees that were "normally accepted" with respect to the bank, an offer Mike's counsel declined. The court did ask Loeber specific questions regarding hourly charges and ranges for trustee's fees which Loeber answered based on his "factual knowledge."

¶ 21 The trial court denied Widdows' second application for fees in part and granted it in part. The court found that Widdows' hourly rates and the services rendered were reasonable, but reduced the award by 20% for block billing and concluded that $500 should be deducted from the fee award for services pertaining to an unrelated case. The court awarded Widdows interim attorney fees in the amount of $77,912.80 and interim costs in the amount of $820.45.

¶ 22 Mike appeals.

### STANDARD OF REVIEW

■ ¶ 23 Issues that arise in the context of administration of trusts are matters of equitable cognizance. *See In re Lorice T. Wallace Revocable Trust*, 2009 OK 34, ¶ 2, 219 P.3d 536, 537. "In an equitable matter, the Court will examine the whole record and weigh the evidence, but the trial court's findings will not be disturbed in that review unless they are clearly against the weight of

---

**3.** The $35,000 was later placed back into the Trust. According to Mike, the transfer was due to bank error.

the evidence or some governing principle of law." *Id.*

¶ 24 A trial court's order limiting a witness's testimony will not be disturbed unless shown to be a clear abuse of discretion. The Oklahoma Supreme Court has applied this standard to expert witnesses. *Christian v. Gray*, 2003 OK 10, ¶ 42, 65 P.3d 591, 608 (citing *Gabus v. Harvey*, 1984 OK 4, 678 P.2d 253). In applying this standard to an expert witness, the Supreme Court relied on the U.S. Supreme Court opinion that applied the abuse of discretion standard to *Daubert* rulings. *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶ 32, 980 P.2d 116, 132 (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). "[T]he clear abuse of discretion appellate standard applies when we review a decision on the admissibility of expert testimony." *Christian*, 2003 OK 10 at ¶ 42, 65 P.3d at 608.

¶ 25 We therefore examine the record and the trial court's rulings pursuant to these principles.

## ANALYSIS

¶ 26 The Oklahoma Trust Act, 60 O.S.2011 § 175.48, provides:

A trustee acting in a fiduciary capacity, as herein authorized, is entitled to receive such compensation or commission as provided for in the trust agreement or other contract. If the amount of such compensation or commission is not regulated by or stipulated in the trust agreement, the trustee may charge and deduct a reasonable compensation or commission for the services rendered and the responsibilities assumed. *Where the trustee is acting under appointment by a court, such compensation or commission shall be paid, irrespective of the provisions in the trust instrument, as allowed or approved by that court.*

(Emphasis added.) The Trust Act further provides, "In a judicial proceeding involving a trust, the court may in its discretion, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust which is the subject of the controversy." 60 O.S.2011 § 175.57(D).

### 1. Value of the Trust Estate

¶ 27 Mike first asserts the trial court erred in awarding over $148,000 in fees because the estate was worth only $592,000. Mike asserts Widdows "spent an inordinate amount of time generating fees, without significantly increasing the value of the estate." First, we note that Widdows was not assigned the responsibility as interim successor trustee to increase the value of the estate.[4] The court directed Widdows to prepare an accounting and "collect, preserve, value, and if needed repair the Trust's assets." Second, the court specifically recognized that "the amount of legal services based upon the amount of money that's involved in this case is not proportionate." It appears that the condition of the Trust assets and the lack of sufficient Trust financial records required Widdows to spend substantial time to accomplish the tasks for which she was appointed.

¶ 28 The photographs of the Trust rental properties included in Widdows' final report to the court show that the properties were not in good condition when she became interim successor trustee. Widdows states in her report that she "was appalled at the condition of all three Brady Trust Rental Properties when she first inventoried them and viewed the real estate." She notes that the condominium had an increase in value of $2,400 while Mike was acting as trustee and that he had collected only $1,775 in rent for the condominium while he was trustee. Widdows states that Mike reported "the property was in poor condition when he became Successor Trustee and he did not want to spend money on it because it might be needed for Marguerite P. Brady's care." Widdows states that if the property had not fallen into disrepair and had been rented, the Trust

---

4. The holding in *In re Katschor*, 1981 OK 125, 637 P.2d 855, that attorney fees in contested probate proceedings will not be allowed unless the attorney's services fall within the "common fund doctrine," that is, benefitted the entire estate by increasing its assets, is not pertinent on its facts to the present case.

could have received 66 months of rent at $500 per month.

¶ 29 Regarding the 126th East Avenue property, Widdows claimed it lost $42,000 in value while Mike was trustee. Mike claims the property was in poor condition when he became trustee and he did want to spend money on it that might be needed for Marguerite's care. Widdows claims there were vagrants and squatters living in the property for possibly a year and if properly maintained, it could have been rented for 54 months at $675 per month. Although the property was valued by the County Assessor at $67,000, the Trust received an offer of $25,000 for the property in 2010.

¶ 30 Widdows reported that the 49th Street property lost $34,700 in value while Mike was trustee, but it has now been repaired and remodeled. She claims that the property could have been rented for a total of $31,450 but it fell into disrepair and was vandalized.

¶ 31 In his brief on appeal, Mike charges that the amount of time and fees expended on the real property assets was inordinate and "disproportionate to the value of the properties and what can be recouped within a reasonable time." He further argues, "Lack of billing judgment regarding proportionality and materiality should not be rewarded or allowed." Both parties cite *Swanson v. Bates*, 1949 OK 231, 211 P.2d 781, as authority regarding the court's authority to determine trustee's fees pursuant to 60 O.S. § 175.48. The Supreme Court in *Swanson* specifically approved the trial court's conclusion that "[n]o other authority than the statute [60 O.S. § 175.48] is needed in this connection that the pay of the trustee is reasonable compensation in the discretion of the Court taking into consideration 'the services rendered and the responsibilities assumed.'" *Id.* at ¶ 40, 211 P.2d at 788. The Supreme Court affirmed the trial court's award of fees as requested by the trustee over the protestations of the trust beneficiary. *Id.* at ¶ 44, 211 P.2d at 789. Following *Swanson*'s guidance, we review the trial

court's determination of what in its discretion constitutes reasonable compensation "taking into consideration 'the services rendered and the responsibilities assumed.'"

¶ 32 In the absence of trust terms or statutory provisions setting compensation guidelines, Oklahoma law is not well-established on the question of how court-appointed trustees' fees are to be determined, that is, the factors to be considered in arriving at a reasonable fee, other than the language in *Swanson* to consider "the services rendered and the responsibilities assumed." [5] We are persuaded that the Restatement (Third) of Trusts provides appropriate guidance on relevant factors:

> [T]he trustee's skill, experience and facilities, and the time devoted to trust duties;
>
> [T]he amount and character of the trust property;
>
> [T]he degree of difficulty, responsibility, and risk assumed in administering the trust, including in making discretionary distributions;
>
> [T]he nature and costs of services rendered by others; and
>
> [T]he quality of the trustee's performance.

Restatement (Third) of Trusts § 38 cmt. c(1) (2003). We find further guidance in two additional factors similar to those long-enunciated in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, ¶ 8, 598 P.2d 659, 661, used in setting reasonable attorney fees: the customary fee for similar services in the locality, and any time limitations imposed by the court or the circumstances.

¶ 33 Applying these factors, we find persuasive Widdows' synopsis in her appellate brief of the evidence which satisfies these factors. Given the time required by the rental properties, the need to recreate the books because no books or records for the Trust were provided to Widdows to undertake the accounting, the beneficiaries' request of Widdows to marshal assets without the benefit of substantiating information as to what constituted Trust assets, and the quarrelsome, contentious relationship of the

---

5. As Mike points out in his brief on appeal, "There are no Oklahoma cases involving a court-appointee, rather than grantor-appointed, trustee which provide clear standards for awarding compensation."

beneficiaries requiring Widdows' intercession, we cannot conclude that Mike has clearly shown that the amount of time Widdows billed for her work was unreasonable. The Trust Act, 60 O.S.2011 § 175.48 and 60 O.S. 2011 § 175.57, authorizes the award of fees, and the evidence presented at the hearing, viewed in light of the factors delineated above, supports the trial court's award; the record does not support the conclusion that the award was unreasonable, against the clear weight of the evidence, or contrary to law.

### 2. Purpose of the Accounting

¶ 34 Mike argues the trial court erred in approving attorney fees for Widdows' accounting because Petitioners should pay for the accounting as part of their underlying claim against Mike for breach of fiduciary duty on which they have the burden of proof. He claims Widdows gathered and analyzed documents to determine whether he had committed any wrongdoing. We reject this contention. The court specifically directed Widdows to prepare an accounting and to "collect, preserve, value, and if needed repair the Trust's assets." The record does not support the conclusion that Widdows intended to use the accounting to help Petitioners show Mike had not fulfilled his fiduciary duty. Because Mike as trustee provided no previous accounting to Widdows when she became interim successor trustee, she was obliged to gather information and collect data to produce her own accounting and to determine what assets belonged to the Trust and whether there were assets unaccounted for.

¶ 35 We agree, as Widdows points out, that the trial court entered its order for an accounting before she was appointed, and that upon her appointment, the court directed her to prepare and submit an accounting that Petitioners "alleged is missing." The accounting is for the benefit of the Trust and all of its beneficiaries, including Mike, and not simply for Petitioners' benefit.

### 3. Scope of Appointment

¶ 36 Mike also argues that Widdows acted outside the scope of her appointment by "look[ing] back beyond the date of [her] appointment." He asserts that by providing an audit of Trust accounts back to 2004 and accounting for disputed property, Widdows acted improperly. As trustee, Mike was originally ordered to produce an accounting from 2004, an obligation which continued until the time Widdows was appointed when he was relieved of that duty. Because Widdows performed that obligation and completed the accounting, we see no abuse of discretion in the trial court approving compensation for this work. If the trial court considered this to be outside the scope of her appointment, it had the discretion to deny fees for this work. Mike has not shown that the trial court's decision on this issue constitutes an abuse of discretion requiring reversal.

### 4. Rate for Non–Legal Functions

¶ 37 In his next proposition of error, Mike claims that the court erred in awarding fees at the rate an attorney charges when non-legal functions such as trust administration and bookkeeping were being performed. Although the Oklahoma Trust Act, 60 O.S. 2011 § 175.24(A)(9), allows Widdows as trustee to employ agents reasonably necessary to administer the Trust, the court's direction does not require her to use anyone else to perform her court-ordered functions. At the time of her appointment, all parties were aware Widdows was an attorney with accounting experience and that her recovery of fees and costs would be subject to court approval.

¶ 38 Conversely, Mike asserts trial court error in approving excessive fees relating to repair and property management services which were billed as paralegal fees. Although Mike claims that the $15,000 billed for Widdows' brother's services are excessive, we see no evidence on which to find a lower fee to be a reasonable charge for those services. Also, we agree with Widdows that the amount billed for those services would have been higher had she performed them. We conclude Mike has not shown that the trial court's decision awarding these fees was unreasonable.

### 5. Exclusion of Testimony

¶ 39 In his last proposition of error, Mike contends the trial court erred in sustaining Widdows' objection and excluding the testimony of Mark Loeber as an expert on the reasonableness of Widdows' fees. It is clear from the record that Loeber's expertise involves assisting a bank as a board member to approve trustee fee schedules for its trust department. He has never been appointed as a trustee by a court, and it does not appear that he has any familiarity or expertise regarding the fees of an attorney appointed by a court to act as a successor trustee when an existing trustee and the beneficiaries are at odds over the management of a trust.

¶ 40 Title 12 O.S.2011 § 2702 provides:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

1. The testimony is based upon sufficient facts or data;

2. The testimony is the product of reliable principles and methods; and

3. The witness has applied the principles and methods reliably to the facts of the case.

¶ 41 In *Christian v. Gray*, 2003 OK 10, 65 P.3d 591, the Oklahoma Supreme Court adopted the standard in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which sets forth specific factors to be used in determining whether expert opinions are scientifically valid and reliable. Applying *Daubert*, the trial court is to examine the relevance and reliability of the proposed evidence. "The inquiry is a flexible one, and focuses on the evidentiary relevance and reliability underlying the proposed submission, and not on the conclusions they generate." *Id.* at ¶ 8, 65 P.3d at 598. Where an expert's "factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.' " *Id.* at ¶ 11, 65 P.3d at 599 (quoted citation omitted).

¶ 42 Mike asserts Loeber qualifies as an expert under the *Daubert* standard. We think the issue here is whether Loeber has any specialized knowledge that would aid the court in determining whether Widdows' fees were reasonable. We find no abuse of discretion in limiting Loeber's testimony because his stated expertise does not lie in the area of fees charged by court-appointed trustees to administer high-conflict trusts, which was the issue before the trial court.

¶ 43 Although Loeber was not allowed to express his opinion on the reasonableness of Widdows' fees, the trial court specifically asked Loeber what in his experience had been the trustees' hourly fee generally charged by the bank, to which Loeber replied, "[I]t was either forty-five or sixty-five dollars an hour." He further testified that attorney fees charged by outside counsel to the bank for trust management services ranged from "a hundred and fifty, two-fifty, two seventy-five an hour." The trial court certainly had the benefit of Loeber's indirect critique of Widdows' fee when the witness in response to a question from the bench told the court that a trustee's fee of $40,000 "in a situation like this" would be at the high end of the fee range. We see no abuse of discretion in the trial court's ruling, and absent an abuse of discretion, the trial court's decision must be affirmed.

### 6. Appeal-related Attorney Fees and Costs

¶ 44 Finally, in his response to Petitioners' motion to dismiss this appeal, Mike requested appeal-related attorney fees and costs citing 60 O.S.2011 § 175.24(A)(9) and 60 O.S.2011 § 175.57(D). Based on our conclusions in this case, we find that Mike is not entitled to attorney fees or costs as provided in 60 O.S.2011 § 175.24(A)(9) because they were not incurred as "reasonably necessary in the administration of the trust estate." In the exercise of discretion, "as justice and equity may require," we further decline to award him attorney fees and costs pursuant to 60 O.S.2011 § 175.57(D).

## CONCLUSION

¶ 45 Mike has failed to show the trial court's decision awarding fees and costs to the interim successor trustee was either against the clear weight of the evidence or contrary to law. Accordingly, we affirm the decision of the trial court.

¶ 46 **AFFIRMED.**

FISCHER, C.J., and BARNES, P.J., concur.